**In the Matter of REA HOLDING CORPORATION the Express Company, Inc., REA Express, Inc., f/k/a Railway Express Agency, Inc. and Rexco Supply Corporation, Bankrupts.**

**Nos. 75–B–0251, 75–B–0252, 75–B–0253 and 75–B–0254 (JJG).**

United States District Court, S. D. New York.

Jan. 25, 1978.

Wisehart, Friou & Koch, New York City by Arthur M. Wisehart, New York City, for appellant.

Whitman & Ransom and Marcus & Angel, New York City by William M. Kahn and Joshua J. Angel, New York City, of counsel, for appellee-trustee.

WERKER, District Judge.

These are consolidated appeals from an opinion and order entered by the Honorable John J. Galgay, Bankruptcy Judge, on July 16, 1976 authorizing sale of the Bankrupt's authorities to Alltrans Express—U.S.A. ("Alltrans") and an order entered on August 19, 1976 granting the trustee's motion to strike certain items from the record on appeal. Reaemco, Inc. ("Reaemco"), the appellant, was an unsuccessful bidder for the assets offered for sale.

BACKGROUND

The opinion and order dated July 16, 1976 was rendered by Judge Galgay after hearings held on June 23, 24, 25 and 30 and July 1, 8 and 9, 1976 and found the following:

1. That the offer of Alltrans as amended on the record during the hearings, represents a fair and reasonable value for the Property;

2. That the Alltrans offer is the best offer which was submitted to the Court for consideration at such hearing;

3. That the acceptance of the Alltrans offer is in the best interests of the bankrupt estate;

4. That the Alltrans offer provides the probability of the greatest realization to the bankrupt estate from the sale of the property;

5. That the attorneys for the Trustee and the attorneys for Reaemco have stipulated that if a proper petition for reorganization under Chapter X of the Bankruptcy Act was or is properly filed before this Court, that the entire record made of these hearings, including but not limited to the order fixing the hearing, the application for such order and exhibits annexed, the stenographic transcript of all hearings and the exhibits introduced by all parties, the memorandum decision of this court and this order, shall constitute the entire record in support of such petition by such petitioning creditors; [and]

6. That it would be adverse to the interests of the bankrupt estate that any assets of the bankrupt presently in the hands of the Trustee be put at risk to enable the trustee to continue [to] expand an express business, other than the continued operation of the REXCO division by the Trustee pending the final disposition of the Property.

Reaemco's proposal was rejected by the Bankruptcy Judge in favor of a proposal made by Alltrans. Nevertheless, unless it can be shown that there is some evidence of fraud, deceit, mistake of fact or other inequitable overreaching, Reaemco, as an unsuccessful bidder, has no standing to bring this appeal. *In re Harwald Company*, 497 F.2d 443, 444 (7th Cir. 1974). In this connection section 39(c) of the Bankruptcy Act limits the right of appeal from a decision of the Bankruptcy Court to aggrieved persons, which does not include unsuccessful bidders. *See In re Realty Foundation, Inc.*, 75 F.2d 286, 287–88 (2d Cir. 1935).

DISCUSSION

The statement of issues presented on this appeal is as follows:

1. Whether the Bankruptcy Judge erred in failing to make findings as to the value of claims for services performed by employees from February 18, 1975 through November 5, 1975, when the Bankrupt was operated as a debtor-in-possession under Chapter XI of the Bankruptcy Act.

2. Whether disposition of the Bankrupt's operating rights on the terms of the Alltrans proposal is fair and equitable to the creditors of the Bankrupt.

3. Whether Finding 6 of the Bankruptcy Judge is arbitrary and capricious, in view of the undisputed testimony that the Bankrupt's operating rights, if made permanent, would be worth $50 to $100 million.

4. Whether the Bankruptcy Judge erred in failing to accept the petition under Chapter X of the Bankruptcy Act tendered during the proceeding herein, and fail[ing] to make findings with respect to the propriety and desirability thereof.

5. Whether Finding 5 of the Bankruptcy Judge is not clearly erroneous.

6. Whether the notice of the hearing was adequate.

7. Whether the Trustee's recommendation was given undue weight, in view of the circumstances.

8. Whether a prior determination on notice to all creditors should not have been made by the Bankruptcy Judge with respect to the issue of conflict of interest.

9. Whether the Bankruptcy Judge erred in not making findings with respect to the motion to strike and the issues posed therein, in the context of this proceeding.

Taking these issues *seriatim*, I make the following findings:

■ 1. *Failure to determine value of employee claims*. Upon the record of hearings the Bankruptcy Judge did not err in failing to make findings as to the value of claims by employees during the period February 18 through November 5, 1975. These claims and the surrender of them were part of the Reaemco proposal. The Bankruptcy Judge in considering that proposal had to consider whether it was as a whole the best offer. In this regard it is apparent from the record that it was based upon projections which were more "pie in the sky" than realistic. Consequently no matter what the value of the claims involved might have been found to be, whether the correct amount was $12 million or $34 million or something in between, making the additional findings sought by Reaemco would not in any way have increased the availability of the startup money (for which Reaemco apparently did not have commitments), the viability of the Reaemco proposal or the likelihood that the trustee would have been able to transfer at the end of 10 years a debt-free REA Express, Inc.

■ 2. *Fairness to creditors*. Upon all the facts and circumstances disclosed in the record it was fair and equitable to all creditors for the Bankruptcy Judge to have accepted the Alltrans proposal as the best offer based upon its financial ability to perform, its presently functional organization, its desire to take over all temporary and permanent authorities and the fact that its proposal was not dependent upon continuation of the Bankrupt's REXCO division.

■ 3. *Determination that the Trustee should not risk expansion of non-REXCO express business*. Finding 6 of the Bankruptcy Judge, that the assets of the Bankrupt should not be used to expand express operations other than the REXCO division, was neither arbitrary nor capricious. The testimony of Ralph Nogg, Reaemco's expert, was to the effect that the Bankrupt's rights would be worth $50 to 100 million *if they were made permanent*. Mr. Nogg's testimony is to some extent tarnished because he was acting here as an advocate rather than a disinterested expert, but aside from that fact its importance is much attenuated by the underscored proviso above—since the operating rights and especially the temporary rights of the Bankrupt would seem to be in jeopardy. Judge Timbers recently emphasized this point in his opinion in *REA Express, Inc. v. United States*, No. 76–4278 (2d Cir. Sept. 16, 1977), 568 F.2d 940, in which he noted that the Interstate Commerce Commission properly

dismissed the Bankrupt's application for permanent operating authority after finding that:

> applicant REA . . . has failed to prosecute its application in a timely manner; that applicant is not shown to be capable of prosecuting the application; that attempted prosecution of the application would not appear likely to result in a feasible operation consistent with the public interest and the national transportation policy or required by the public convenience and necessity such that any appropriate authority would be issued as a result of such prosecution . . . .

*Id.*, 568 F.2d at 946.

■ 4 and 5. *Attempted filing of Chapter X petition.* These questions have been mooted by the decision of the Second Circuit in *In re REA Holding Corporation (Manning v. Sowerwine)* (2d Cir. 1977), 558 F.2d 1127, affirming Judge MacMahon's determination that the petition was not filed in good faith.

■ 6. *Adequacy of notice of the hearing.* The record indicates that the notice of hearing was in proper form and that it was given to all of the creditors listed in the Bankruptcy Clerk's computerized file at that time.

■ 7. *Weight accorded the trustee's recommendations.* That the trustee's recommendations were not given undue weight is evidenced by the number of days that Judge Galgay listened to testimony, the questions asked by him and the amendments to the Alltrans proposal which were made during the course of the hearing.

■ 8. *The alleged conflict of interest.* The issue of disqualification of the trustee was not formally before the Bankruptcy Court in relation to any of the proposals made. Certainly in order to show that a person is to be disqualified there must be produced by the person claiming disqualification a modicum of evidence which serves to connect the allegedly competing interest with the business at hand. Here there has been no showing that any of the proposals were connected in any way with business interests that the trustee may presently have or those that he had before being named trustee and Reaemco has not shown any impropriety on the part of Alltrans in connection with the trustee. In my opinion the fact that the trustee is an officer of a corporation having a railroad as its client, without more, is not a sufficient reason to set aside the validity of a contract made and affirmed by the Bankruptcy Court based upon what appears to be, after thorough examination, a bona fide offer.

■ 9. *Failure to make findings regarding motion to strike.* In response to a motion by Reaemco to strike certain language in a reply memorandum submitted by the Trustee's counsel as scandalous, Judge Galgay ordered both the Reaemco motion and the reply memorandum stricken from the record on appeal. An appeal from that decision is now consolidated before this court however counsel for the trustee has consented to withdraw the offensive memorandum—and in my opinion rightfully so. As a consequence, the appeal from the order denying the motion to strike has now become moot.

■ While I do not think that the rule of practice governing the striking of such matters from pleadings is applicable here, *see* Rule 12(f), Fed.R.Civ.P., I am of the opinion that a court has inherent power to strike scandalous matter from any document submitted to it. Certainly it behooves counsel to be more temperate in their language when characterizing the actions of opposing counsel or their clients.

Based upon the foregoing both appeals are denied.

Submit order on notice.