In re NEW HAVEN RADIO, INC., Debtor.

In re Anthony R. MARTIN–TRIGONA, Debtor.

Nos. 81 Civ. 6526, 81 Civ. 6528 and 81 Civ. 6529.

United States District Court, S.D. New York.

Oct. 20, 1982.

Anthony R. Martin-Trigona, pro se.

Coan, Lewendon & Royston, New Haven, Conn., for Richard Belford trustee of the Estate of Anthony R. Martin-Trigona; Richard M. Coan, New Haven, Conn., of counsel.

Ullman, Perlmutter & Sklaver, New Haven, Conn., for Daniel Meister, trustee of the Estate of New Haven Radio, Inc.; Irving H. Perlmutter, New Haven, Conn., of counsel.

Levin & Weintraub, New York City, for Capital Cities Communication, Inc.; Elias Mann, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are motions to dismiss appeals from three orders entered in the Bankruptcy Court of this district which (1) transferred the Chapter XI proceeding of New Haven Radio, Inc., debtor ("corporate debtor"), to the United States Bankruptcy Court for the District of Connecticut, which order was entered on January 28, 1981; (2) also transferred the Chapter XI proceeding of Anthony R. Martin-Trigona, debtor ("individual debtor" or "Martin-Trigona"), to the same court, which order was entered on January 29, 1981; and (3) directed the United States Trustee to reappoint a disinterested trustee for New Haven Radio, Inc., debtor, to operate its business and perform all duties set forth in 11 U.S.C., section 1106(a). This order was entered on January 20, 1981. Appellants are the debtors; the movants seeking dismissal of the appeals are the trustees in each proceeding and Capital

Cities Communication, Inc. ("Capital Cities"), the largest creditor of the corporate debtor ("the appellees").

At the time the orders were entered, the corporate debtor and Martin-Trigona were represented by the same firm of attorneys who had filed on behalf of each the Chapter XI petition. Martin-Trigona then was imprisoned in a federal penitentiary upon his conviction of mail fraud in August 1980. During the pendency of the instant motions the conviction was reversed on July 16, 1982 and a new trial ordered.[1]

■■■ Orders transferring venue are interlocutory and not appealable as of right, but require leave of court.[2] The appellees initially urge that such leave not be granted for various reasons, such as inordinate delay in prosecuting the appeals and actions already taken in the transferee court which have resulted in a comprehensive change of circumstances. Since Chapter XI cases usually involve ongoing proceedings, including the entry of various orders that affect the substantive rights and interests of creditors, third parties and debtors, unless an appeal is patently frivolous, leave to appeal should be liberally granted where resolution of the issue sought to be reviewed on appeal will serve to bring about the expeditious termination of the case either by an approved plan or liquidation.[3] Here, in view of the multiplicity of proceedings over an extended period with their charges and counter-charges, and the inordinate delay in concluding the cases to the prejudice of interested parties, the Court deems it desirable that leave to appeal be granted and the appeals be decided on the merits with the prospect of a prompt termination of all matters.

Upon a study of the entire record, the Court is satisfied that the factual findings underlying all three orders were not clearly erroneous;[4] in addition, the Bankruptcy Judge correctly applied the law in each instance. With respect to the two transfer orders, the Bankruptcy Judge did not abuse his discretion under 28 U.S.C., section 1475; indeed, under all the circumstances, both transfers were a wise exercise of discretion. As to the order reappointing a trustee, the Bankruptcy Judge correctly applied 11 U.S.C., section 1104(a)(2), which required him to reappoint a trustee given his factual finding that doing so was in the best interest of the creditors and the estate. Accordingly, each order is affirmed.

I. The order transferring the corporate debtor's proceeding to the Bankruptcy Court, District of Connecticut.

■■■ On September 10, 1980, New Haven Radio, Inc. filed a Chapter XI petition in the Bankruptcy Court of this district. The attorneys who filed the petition on behalf of the debtor were Gellis & Mellinger, with Jan Gellis in active charge. The principal asset of the corporate debtor was listed as a Federal Communications Commission ("FCC") license to operate a radio station ("WNHC") at New Haven, Connecticut.

1. *United States v. Martin-Trigona,* 684 F.2d 485 (7th Cir. 1982).

2. 28 U.S.C. § 1334(b); *L.F. Popell Co. v. Delta Airlines, Inc.,* 323 F.2d 50, n. 1 (2d Cir. 1963).
  Whether an order appointing a trustee is final or interlocutory under the new Bankruptcy Code is not completely clear. Cases decided under the old Code held that such orders were interlocutory. *See, e.g., In re Homer Arth Well No. 1,* 529 F.2d 1272, 1274 (6th Cir. 1976); 1 Collier on Bankruptcy ¶ 3.03[7](d)iii at 3–202. But the legislative history to the new Code suggests that Congress considered appointment of a trustee to be a final order. *See* H.R.Rep. 595, 95th Cong., 1st Sess. 444 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 6400. *See also Maiorino v. Branford Savings Bank,* 691 F.2d 89, at 94 (2d Cir. 1982) (Lumbard, J., dissenting). It is unnecessary to decide here whether orders appointing trustees are interlocutory or final under the new Code because even if interlocutory this Court would grant leave to appeal for the reasons discussed herein. Thus the question is left open for another day.

3. *Cf. Maiorino v. Branford Savings Bank,* 691 F.2d 89, at 91 (2d Cir. 1982); *In re Roberts Farms, Inc.,* 652 F.2d 793, 798 (9th Cir. 1981); *In re Landmark Capital Co.,* 20 B.R. 220 (S.D. N.Y.1982); *In re Hadar Leasing Int'l Co.,* 14 B.R. 819 (S.D.N.Y.1981); *see also* 1 Collier on Bankruptcy, ¶ 3.02 at 3–208.1 (15th ed. 1981).

4. *See* Bankruptcy Rule 810; *see also* 1 Collier on Bankruptcy ¶ 3.03, at 3–315 (15th ed. 1981).

Martin-Trigona was stated to be its sole stockholder. The address for the corporate debtor in this district was set forth as P.O. Box 4233, Grand Central Station, New York, N.Y. 10163. Following the filing of the petition, the United States Trustee appointed a trustee to administer the affairs of the corporate debtor; thereafter, that trustee was removed and the debtor was continued as a debtor in possession for a short period, following which a new trustee was appointed, a matter discussed hereafter in connection with the appeal from the order appointing that trustee.

On January 20, 1981 Capital Cities moved to transfer the case to the District of Connecticut on the ground of improper venue. The matter was heard by Bankruptcy Judge Roy Babitt ("Bankruptcy Judge"). Attorney Gellis argued in opposition to the motion and also submitted his affidavit. Apart from the contention that venue in this district was improper under 28 U.S.C., section 1472,[5] the movant argued that a transfer was warranted "in the interest of justice and the convenience of the parties" under 28 U.S.C., section 1475.[6] Essentially, the transfer was urged on the ground that the principal and sole asset of the corporate debtor was the radio station with its physical plant, equipment and accessories all located in the District of Connecticut, which was the seat of its functional activities; that all its books, records and personnel were also located there. In addition, of the thirty-two creditors listed in the petition, sixteen had their places of business in New Haven or the adjacent area; six within the State of New York and the remainder in jurisdictions other than New York and Connecticut.[7] It appeared that the only contacts with this district were that the attorneys for the debtor maintained their offices in New York City and that, as already noted, the debtor had a post office box address in New York City, and that some furniture owned by the debtor was alleged to be located there.

Counsel for the debtor, on the argument of the motion, did not address himself to the merits of the movant's application but renewed an application that had been previously denied for the issuance of a writ of habeas corpus ad testificandum to bring Martin-Trigona to this district in connection with the application for the change of venue. The Bankruptcy Judge denied the motion, pointing out that there had been ample time to prepare an affidavit if indeed one were required; that further opportunity would be afforded for its submission but counsel did not avail himself thereof; and that the usual procedure in passing on applications for change of venue was on affidavits.[8] The basic and pertinent facts relevant to the application for the transfer were beyond dispute.

The only factual ground urged by the debtor's attorney in opposition to the motion was that Capital Cities, whose claim was in excess of $600,000, had its place of business in New York City—a contention that was utterly illogical, to say the least, since Capital Cities was the movant for the change of venue. The Bankruptcy Judge questioned that the petition had been properly filed in this district but, assuming arguendo that it was, stressed that the facts

---

**5.** § 1472. *Venue of cases under title 11*

... [A] case under title 11 may be commenced in the bankruptcy court for a district—

(1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period than the domicile, residence, principal place of business, in the United States, or principle [sic] assets, in the United States of such persons were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

**6.** 28 U.S.C. § 1475. *Change of venue*

A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

**7.** Transcript of Hearing on Adjourned Motion to Change Venue, January 28, 1981, at 13.

**8.** *Id.* at 8–12.

nonetheless justified the transfer; that the operation of the radio station had public interest aspects and that "the only thing that counts ... is the radio station, the premises from which it operates, its transmitter and equipment."[9] A close study of the entire record compels the conclusion that the factors favoring the transfer were overwhelming—in sum, it was abundantly established that it was, in the words of the statute, "in the best interest of justice and for the convenience of the parties."[10]

Additional factors militate against the appeal. First, no application for a stay of the order of transfer was applied for as authorized by Bankruptcy Rule 805. In the administration of estates under the bankruptcy laws, policy considerations strongly support a requirement that a stay be obtained pending an appeal or a proposed appeal because without a stay substantial change of circumstances may occur which may adversely affect third parties, the debtor itself or even render an appeal moot.[11] Here, in the absence of a stay, the instant proceeding in due course was transferred to the Bankruptcy Court of the District of Connecticut. Thereafter various orders were entered in that court, including confirmation of a plan of reorganization. The Connecticut Bankruptcy Court has administered the corporate debtor's proceedings for more than a year and has acquired familiarity with the details and background of the case. In such circumstances, one Court of Appeals has held: "[T]he failure to seek stays coupled with a substantial change of circumstances would justify dismissal of the appeal for lack of equity."[12]

Second, Rule 806 of the Rules of Bankruptcy Procedure requires that an appellant, within ten days after filing the notice of appeal, shall file with the Bankruptcy Judge and serve on the appellee the designation of the contents for inclusion in the record on appeal and a statement of the issues he intends to present on appeal. The notice of appeal was filed with the Bankruptcy Judge on February 4, 1981, but the designation of contents was not filed until more than nine months later, on October 23, 1981. Clearly the designation was untimely. No extension of time was applied for. The present contention that the delay was excusable due to the incarceration of Martin-Trigona is without substance. The attorneys who filed the appeal on behalf of the corporate debtor had represented it from the filing of the petition and were experienced in bankruptcy law. It was their duty to perfect the appeal.[13]

Other procedural defects require denial of the appeal. The entry of the appeal on the docket of this court was on October 23, 1981. Under Rule 808 of the Rules of Bankruptcy Procedure appellant was required to file its brief within fifteen days thereafter. The appellant's brief was not filed until May 12, 1982, almost five months

9. *Id.* at 36.

10. 28 U.S.C. § 1475. *See also In re Hadar Leasing Int'l Co.,* 14 B.R. 819, 821 (S.D.N.Y. 1981) ("[T]he factor which overwhelmingly militates in favor of transfer was ... that substantially all of ... [the debtor's] assets were in ... [the transferee district].")

11. *See In re Roberts Farms, Inc.,* 652 F.2d 793, 796 (9th Cir. 1981).

12. *Id.* at 798. *See also Valley National Bank of Arizona v. Trustee,* 609 F.2d 1274 (9th Cir. 1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980).

13. Appellees challenge Martin-Trigona's standing as sole stockholder of the corporate debtor to prosecute appeals·or be heard on behalf of the corporate debtor in court. This Court need not address these questions because the two appeals in the corporate proceeding were filed by Gellis & Mellinger, the attorneys of record for the corporate debtor, and not by Martin-Trigona himself. It is noted that no order of substitution replacing Gellis & Mellinger has been entered as required by Rule 3(c) of the General Rules of the Southern District, which provides:

An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

after Capital Cities and the trustee had moved for an order dismissing the appeal.[14] More important, by that date more than fifteen months had elapsed from the entry of the order of transfer and the transfer itself, during which time various orders were entered and actions taken in the Connecticut Bankruptcy Court as authorized therein. In light of the substantial change of circumstances which have occurred under the various orders entered in that court, to vacate the order of transfer at this time would be an unjustified interference with the orderly administration of the bankruptcy proceeding. Thus upon the merits, as well as the procedural deficiencies tainting the appellant's appeal, the order of transfer is affirmed.

II. The appeal from the order reappointing a trustee of the corporate debtor dated January 20, 1981.

■ Following the filing of the petition by New Haven Radio, Inc. on September 10, 1980, the Bankruptcy Judge, by an order dated October 2, 1980, directed the United States Trustee to appoint a trustee to administer the debtor's estate. Nicholas Bua was appointed. His appointment remained in effect until December 8, 1980. At or about that date, Martin-Trigona had been released on bail pending determination of his appeal from the judgment of conviction. On application of the corporate debtor an order was entered by the Bankruptcy Judge on December 8, 1980 that restored the debtor to possession. One of the conditions was that Martin-Trigona make himself available to assist in the orderly administration of the debtor's estate.[15] Soon thereafter, on January 4, 1981, Martin-Trigona's appeal bond was revoked and he was recommitted. Thereafter, on January 13, 1981, Capital Cities moved for the reappointment of a trustee based, inter alia, upon Martin-Trigona's inability to operate the New Haven radio station by reason of his incarceration and the prospect that the station's radio license, the debtor's principal asset, was in jeopardy. This motion was heard by the Bankruptcy Judge on January 19, 1981. The United States Trustee for the Southern District supported the movant's application. Mr. Gellis appeared at the hearing on behalf of the debtor and the matter was fully argued.

The Bankruptcy Judge expressed concern that the absence of Martin-Trigona due to his confinement made proper, effective and efficient administration of the debtor's estate difficult. He also noted that Martin-Trigona's outstanding conviction and imprisonment for a crime involving moral turpitude might have an adverse impact upon the value of the debtor's property since it was a factor that the FCC might properly consider with respect to a renewal of the radio station's license. The Bankruptcy Judge expressed his view that the interests of the creditors and the debtor required that its affairs be carried on by a trustee and thereupon granted the application. On January 20, 1981 he ordered that the United States Trustee reappoint a disinterested person as trustee of the debtor to operate its business and perform all duties set forth in 11 U.S.C., section 1106(a). Daniel Meister was designated trustee and has since continued to act in that capacity. In the light of all the attendant circumstances, it is difficult to understand that one can seriously or in good faith challenge the reappointment of a trustee in the interests of the creditors as provided for in 11 U.S.C., section 1104(a)(2). Not to have taken such action would have threatened the very existence or continuance of the radio station's license, the prime asset of the corporate debtor, and deprived the creditors of any meaningful payment upon their claims. The order of the Bankruptcy Judge directing the appointment of the Trustee is affirmed.

---

**14.** *Cf. Sanitation Recycling, Inc. v. Jay Peak Lodging Ass'n, Inc.,* 428 F.Supp. 1022, 1023 (D.Vt.1977) ("The time limits set forth in the Rules of Bankruptcy Procedure ... should not be ignored.")

**15.** Transcript of Hearing on Reappointment of Trustee, January 19, 1981, at 6 et seq.

III. The transfer of Chapter XI Anthony R. Martin-Trigona proceeding to the Bankruptcy Court of the District of Connecticut.

■ On December 2, 1980, while the corporate debtor proceeding was still pending in this district, Martin-Trigona filed an individual voluntary Chapter XI petition in this district, which listed his post office address, c/o Gellis & Mellinger, Two Pennsylvania Plaza, New York, New York 10001, the office of his attorneys representing him in that proceeding. At the time of the execution of the petition, Martin-Trigona was incarcerated. He stated that among his principal assets were his ownership interests in two radio stations, one of which was the New Haven Radio, Inc., the corporate debtor already referred to, of which he was the owner of 100% of the stock. The other station was WHET, Inc., located in Waltham, Massachusetts. He stated that the amount of his "Debts" and the value of his "Property" were unknown, attributing the lack of specificity to "lack of access to books and records and his current status in federal custody."

By motion dated December 23, 1980 Martin-Trigona's attorneys sought, pursuant to Bankruptcy Rules 116(c) and 11–13, to remove and consolidate a Chapter XI WHET, Inc. proceeding then pending in the Bankruptcy Court in the District of Massachusetts, which had been transferred there from this district,[16] and two other proceedings pending in the Northern District of Illinois[17] with Martin-Trigona's individual and the New Haven Radio, Inc. proceedings in this district[18] upon allegations that he was an interested party in all proceedings. The affidavit in support of the application was made by attorney Gellis who, among other matters, referred to Capital Cities as the largest creditor and alleged that its expectancy of recovery and that of other creditors was diminished by the pendency of the multiple proceedings in the several district courts of bankruptcy. Mr. Gellis swore that "a consolidation of all these proceedings will help provide for an orderly administration of the interest of the debtor and a fair and equitable distribution of the assets of the debtor and all entities with which the debtor is affiliated."[19] That motion was scheduled to be heard on February 18, 1981; however, on January 28, 1981 a number of other motions related to Martin-Trigona's Chapter XI proceedings were heard together by the Bankruptcy Judge. One such motion, opposed by Mr. Gellis, was by a defendant, Robert G. Burns, named in an action commenced by Martin-Trigona, to transfer that action to the Bankruptcy Court in Massachusetts because it centered about agreements related to radio station WHET, Inc., debtor. The conflicting positions of the various parties soon brought to the surface the desirability of a change of venue of Martin-Trigona's proceeding in this district. Thereupon the Bankruptcy Judge indicated that he had power on his own initiative to order a transfer, whether original venue was proper or improper in this district under Bankruptcy Rule 116(b) and that matter, as well as others, was argued at length. Indeed, specific reference was made to the rule by the United States Trustee for the Southern District.[20]

16. Martin-Trigona alleged that he owned 29% of the stock of WHET, Inc. with an option to purchase the remaining 71%. That Chapter XI petition was originally filed in this district and a change of venue to the Bankruptcy Court of the District of Massachusetts was granted by Bankruptcy Judge Galgay. Subsequently, a sale of the operating assets and license was approved by that court, In re WHET, Inc., 12 B.R. 743 (Bkrtcy.D.Mass.1981). In connection with that proceeding, Martin-Trigona, after the transfer of this proceeding to the District Court of Connecticut, moved to transfer the case from Massachusetts to the Bankruptcy Court of Connecticut, which was denied. Id. at 747.

17. In re Citizens Bank and Trust, No. 80 B 13255; In re Harris Trust and Savings Bank, No. 80 B 13256.

18. The motion was made prior to the transfer of New Haven Radio, Inc. to the Bankruptcy Court of Connecticut.

19. Affidavit in Support of Motion for Relief Pursuant to B.R. 116(c) and 11–13, at ¶ 9.

20. Transcript of Hearing on Adjourned Motion S/C v. Burns, etc., January 28, 1981, at 11.

Consideration of a change of venue was a natural development not only of the motion to transfer to the Massachusetts court the adversary action against Burns, but also of the Martin-Trigona motion to consolidate his and the corporate Chapter XI cases.

The Bankruptcy Judge repeatedly questioned the lawyers why bankruptcy proceedings, all involving Martin-Trigona, should be carried on in three separate bankruptcy courts.[21] Judge Babitt queried the lawyers to "tell me why I shouldn't transfer Martin-Trigona out of here since his most important properties are elsewhere."[22] That was the general subject of the hearing addressed by both the court and the lawyers. The convenience of the parties, the interests of justice and judicial economy dictated that to the extent permissible proliferation of proceedings be curtailed. The real issue was where to transfer, whether to the District of Connecticut or the District of Massachusetts. After hearing all counsel, the Bankruptcy Judge found that none of the properties described in Martin-Trigona's petition as part of his estate was located in this district; that his principal asset was his 100% stock interest in the New Haven Radio, Inc., debtor, which had already been ordered transferred to the Connecticut Bankruptcy Court; that even the shares of stock in the New Haven radio station were not in Martin-Trigona's possession in this district, having been deposited in the Court of Appeals for the Seventh Circuit as security for his bail bond. Accordingly, the Court found that in the absence of any tangible asset in this district and with his 100% interest in the corporate debtor whose affairs were to be administered in the District of Connecticut, the only rational decision was also to transfer Martin-Trigona's proceeding to that district and he so ruled. In effect Martin-Trigona's counsel himself recognized this by his statement already referred to in his affidavit that a consolidation "of all these proceedings will help provide for an orderly administration of the interests of the debtor and a fair and equitable distribution of the assets of the debtor and all entities with which the debtor is affiliated." Moreover, Rule 116(c) of the Rules of Bankruptcy Procedure under which Martin-Trigona's motion for consolidation was made specifically provides that the court to which the application is addressed "shall determine the court or courts in which the case or the cases should proceed in the interest of justice and for the convenience of the parties."

The record fairly shrieks that the only proper place for the transfer of this debtor's proceeding was Connecticut. The Bankruptcy Judge correctly put it: "[I]t makes utterly no sense from anyone's administration of this case that ... [Martin-Trigona] should be here and his companies all over New England.... [I]t would be more expedient to administer an individual debtor with his company."[23] In the light of all the facts, the transfer of the case is not only a proper and correct ruling, but the only one that could be made consistent with the efficient administration of the estate. The proceeding did not and does not belong in this district.

Moreover, in this instance, too, no application for a stay was made and there have been significant actions and proceedings in the District of Connecticut. These include the appointment of a trustee and the conversion of the Chapter XI proceeding to one under Chapter VII. At this stage of the proceeding to vacate the order of transfer would be an unwarranted interference with the orderly and efficient administration of the debtor's estate. Accordingly, the order transferring the proceeding to the District of Connecticut is affirmed.

The foregoing disposition renders moot all other motions filed in these appeals.

So ordered.

---

**21.** *Id.* at 9–13.

**22.** *Id.* at 17.

**23.** *Id.* at 31–33.