**In re FINANCIAL NEWS NETWORK, INC., Debtor.**

**Appeal of DOW JONES/GROUP W TELEVISION COMPANY, Dow Jones & Company, Inc. and Westinghouse Broadcasting Company, Inc.**

No. M–47.

United States District Court, S.D. New York.

April 17, 1991.

As Amended April 18, 1991.

Michael A. Rosenthal, Gibson, Dunn & Crutcher, New York City (Ronald S. Orr, Cynthia C. Lebow, David H. Kennedy, of counsel), for Financial News Network Inc., Debtor in Possession.

Patterson, Belknap, Webb & Tyler, New York City (David Dykhouse, of counsel), Dickstein, Shapiro & Morin, Washington, D.C. (Bernard Nash, of counsel), Cravath, Swaine & Moore, New York City (David Boies, of counsel), for Dow Jones/Group W. Television Co., Dow Jones & Co., Inc. and Westinghouse Broadcasting Co., Inc.

Bruce R. Zirinsky, Weil, Gotshal & Manges, New York City (Brian S. Rosen, Philip S. Weber, Deborah Deitsch–Perez, Banks Tarver, of counsel), for Consumer News and Business Channel Partnership.

O'Melveny & Myers, Los Angeles, Cal. (Ben H. Logan, of counsel), Powell, Goldstein, Frazer & Murphy, Atlanta, Ga. (Jesse H. Austin, of counsel), for the Toronto-Dominion Bank.

Michael A. Schlanger, Jeffrey M. Sherman, Alvin Dunn, Joseph C. Figini, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., William I. Weisberg, Weisberg & Weisberg, New York City, for Telesat Cablevision, Inc.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Kenneth H. Eckstein, of counsel), for the Official Committee of Unsecured Creditors of Financial News Network, Inc.

LASKER, District Judge.

This is an expedited appeal from two decisions reached by the Bankruptcy Court for the Southern District of New York on April 3, 1991 in the Chapter 11 proceedings of Financial News Network, Inc. ("FNN"). *In re Financial News Network, Inc.*, 91 B 10891 (FGC).

One decision ruled that one of two bids submitted for FNN's assets (including FNN's broadcast operations and certain other assets) did not meet the court's previously announced requirement that all bids conform to the bid submitted previously by the Consumer News and Business Channel Partnership ("CNBC"), and accordingly refused to consider that bid, which was made by a partnership known as Dow Jones/Group W ("Dow"). The court announced from the bench it would award the assets to CNBC based on its bid of $105 million despite Dow's presentation of a $115 million bid. Dow appeals from that ruling and is joined by the official committee of unsecured creditors and two secured creditors, Security Pacific National Bank and Toronto–Dominion Bank. CNBC opposes these appeals, as does the debtor FNN.

The other challenged ruling is the Bankruptcy Court's determination, also made orally on April 3, 1991, that any antitrust objections or actions by the Federal Trade Commission (FTC) or state agencies to bar the proposed acquisition must be brought before the Bankruptcy Court. That ruling is appealed by the FTC and by the Commonwealth of Pennsylvania and the State of Delaware. CNBC and FNN also oppose these appeals.

Both rulings formally were entered by the Bankruptcy Court in an Order and Judgment dated April 16, 1991. Oral argument on the appeal was heard on April 16 before the formal Order and Judgment was entered, based on the Bankruptcy Court's extensive comments made in connection with its April 3 rulings, as well as on the contents of a proposed Order to implement those rulings which had been submitted to that court.

For the reasons discussed below, the Bankruptcy Court's ruling is vacated as to the disqualification of Dow's bid and the award of the assets to CNBC, and the case remanded for the prompt determination of whether Dow's or CNBC's, or any other available bid, is the highest and best offer to the estate. Decision as to the Court's ruling as to its jurisdiction over any anti-

trust challenges brought by the FTC or the states is rendered separately.

## I.

Because there is no significant dispute as to the facts underlying the decision below or its appeal, and because of the time constraints governing resolution of the appeal, this opinion assumes familiarity with that background and provides no discussion of those facts beyond those needed to support particular conclusions.

■ The standard of review on this appeal, as on any appeal from the decision of a Bankruptcy Judge, is that the factual determinations below are binding unless clearly erroneous, while conclusions of law are reviewable *de novo. See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988–89 (2d Cir.1990).

## II.

The disqualification of Dow's bid culminates an unusual series of events. FNN, which was financially troubled but not in bankruptcy, began courting acquisition offers in late 1990. On February 11, 1991, FNN and Dow agreed in principle to a sale of FNN's cable operations including broadcast equipment for $90 million. On February 22 CNBC offered to buy FNN's cable operations excluding broadcast equipment for $105 million. That offer was styled to expire on February 25, and was conditioned on its nondisclosure by FNN and on FNN's abstaining from soliciting other offers. FNN then broke off negotiations toward a definitive agreement with Dow without disclosing CNBC's offer. Still on February 25, the FNN board approved the CNBC acquisition, which was announced to the public. CNBC and FNN entered a contract for a $105 million acquisition with a "breakup" fee of roughly one to three million dollars should FNN fail to close on the agreement.

On March 1 FNN filed for bankruptcy in the Southern District of New York, and immediately sought Bankruptcy Court approval for its negotiated sale agreement with CNBC. Upon hearing objections from Dow that it claimed that it had been unfairly excluded from the negotiating process and still wished to bid, the court on March 6 scheduled an auction of FNN's assets, to proceed under the terms of negotiating restrictions included in the contract between FNN and CNBC: namely, competing bids were required to exceed CNBC's by at least $10 million, to omit the provision of a break-up fee and to accept all other contractual terms "without change."

On March 20 Dow bid $115 million in a letter bid with a number of provisions, including a specific representation that its bid met all conditions of the CNBC contract as required by the Bankruptcy Court.

A hearing was held March 27 at which the parties discussed how long the Dow bid would remain open. On its face the bid was to remain open until midnight April 3 (the date of the asset "auction"), but Dow's counsel stated that in fact the bid would remain open until the earlier of the Court's award of the asset sale or May 31.[1] At the March 27 hearing neither the Court nor any party indicated that this provision rendered Dow's bid inadequate.

Finally, on April 3 the court held a hearing at which the "auction" was to occur. Following extensive discussion of the termination provisions of Dow's bid, the Court ruled that because Dow refused to be held to its offer any longer than the Court's initial award of the assets to a successful bidder, Dow's offer was not made under the same terms as the CNBC contract and was therefore disqualified. Immediately following this ruling, counsel for CNBC raised its bid from $105 million to $115 million, the same amount Dow had bid.

## III.

■ As an initial matter, CNBC argues that this appeal is premature because it preceded formal entry of the bankruptcy court's Order and Judgment implementing

---

1. At argument on the appeal, Dow's counsel indicated its bid now would be held open at least until the later of a court-ordered auction or three days after entry of any temporary restraining order obtained by FTC or state agencies to bar the sale to CNBC.

its rulings of April 3, and objects that Dow as a "disappointed bidder" lacks standing to challenge the disposition of FNN's assets.

28 U.S.C. § 158(a) provides:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases ... referred under Section 157 of this Title.

Dow and the creditors have argued persuasively that courts have been flexible in applying the finality requirement for jurisdiction over bankruptcy appeals. *See In re Johns–Manville Corp.*, 920 F.2d 121, 126 (2d Cir.1990) ("The finality requirement is less rigidly applied in bankruptcy than in ordinary civil litigation, and 'orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case' "). *See also In re New Haven Radio*, 23 B.R. 762, 764 (S.D.N.Y.1982) (unless patently frivolous, leave to appeal should be liberally granted where resolution of appeal "will serve to bring about the expeditious resolution of the case ..."). Here the court's decision to rule out Dow's bid is a discrete issue for review, and resolution of that question immediately will expedite completion of the case by resolving the issue while an effective remedy remains possible. Moreover, the bankruptcy court provided extensive discussion on the record of the reasons for its ruling on April 3; that discussion provides an ample basis for review.

■ Beyond our conclusion that the order was rightly appealable prior to its written codification, such an order was in fact entered within hours of argument of the appeal. The written order has been provided to the court, and neither our review of it nor any communication from the parties suggests it contains anything that would alter the substance of the April 16 argument or this court's opinion. Indeed, in its Order of April 16, the court stated, "This order is entered to ensure that any party contemplating an appeal, even if interlocutory, will have an order to appeal from."

Order and Judgment ¶ 2. Accordingly, the filing of the order moots CNBC's objection as to the finality of the judgment being appealed, and reinforces the already-ample basis for appellate review.

CNBC also objects that Dow lacks standing to bring its appeal because it is a mere "disappointed bidder." *See Matter of REA Holding Corp.*, 447 F.Supp. 167, 169 (S.D. N.Y.1978). Dow responds that it is not merely a "disappointed" bidder, i.e., one whose bid was received and rejected; it is a "disqualified" bidder, one whose bid was not even considered by the bankruptcy court. It alleges that its exclusion from the bidding process is a harm sufficient to grant standing. *Cf. In re Jewel Terrace Corp.*, 10 B.R. 1008, 1011–1012 (E.D.N.Y. 1981) (unsuccessful bidders lack standing unless they show "that the sale was either fraudulent or unfair and that the property was being sold for a sum below its proper price").

■ Dow appears to have alleged a sufficient basis for it to have standing, but, as in the appealability question discussed above, that question need not be reached. There is no question that the creditors are within the "zone of interests" protected by the bankruptcy code and that they have standing to appeal; the fact that the creditors committee joins in Dow's appeal resolves the standing question.

■ CNBC's final procedural objection is that there is no emergency justifying such expedited treatment of this appeal. To the contrary, swift action is necessary for a variety of reasons. The court below found and all parties agree that FNN is a wasting asset, and that swift sale of the assets is necessary to secure an optimum return. Moreover, the FTC's deadline for seeking to enjoin the CNBC acquisition is Friday, April 19, and any such action would substantially impair the viability of CNBC as a competing purchaser, which would lessen the possibility of vigorous bidding for FNN. Accordingly, it is entirely appropriate for the appeal to proceed on an expedited basis.

■ As to the merits, Dow and the creditors argue that the Bankruptcy Court's refusal to consider Dow's bid merely because of the dispute concerning terminability was an abuse of that court's discretion. They argue that the court's refusal to consider a bid which offered $10 million more than its sole competitor, particularly when an acquisition by that competitor, CNBC, also faced a not insubstantial risk of opposition by the FTC or state agencies, failed to further the interests of creditors, equity holders, and the debtor as required by *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983) (bankruptcy court is to "act to further the diverse interests of the debtor, creditors and equity holders, alike").

The movants' argument is persuasive. The parties and the bankruptcy court all recognized that FNN is a wasting asset and that prompt sale of its assets for the optimum return will best serve all affected parties. Putting aside the question of whether it was appropriate at the outset to employ CNBC's bid as the benchmark to which all others must conform, it was not reasonable for the court to refuse to evaluate the relative merits of Dow's bid when it was the sole competitor to CNBC. Not only was Dow's bid on its face $10 million over CNBC's, it also did not present as significant a risk of being derailed by antitrust proceedings.[2] On the record now presented, Dow's bid appears substantially stronger than CNBC's. If Dow's refusal to serve as a backup by holding its offer open beyond the court's initial award of the assets to someone else (the only provision of its bid identified as objectionable by the court) renders its bid inferior to CNBC's, the court must so state and indicate its reasons.

As to specific findings by the bankruptcy court, the court at ¶ 42 found that the sale to CNBC was supported by "good and sufficient business justifications" as required by *Lionel*, while ¶ 43 found that "approval of the transaction contemplated ... is in the best interests of FNN's creditors and estate." These findings would be correct if the court were choosing from a field of one bid, but appear to be clearly erroneous (more certainty is impossible absent explicit consideration of the bids by the court below) if the field is expanded to include Dow's bid.

CNBC's primary argument to the contrary is that the bankruptcy court clearly stated the rules of the auction on March 6, that all parties including Dow agreed to conform with those rules and accordingly to submit only bids that conformed to the terms of CNBC's bid, and that the court properly ruled that Dow's bid was not qualified. CNBC invokes considerable support for the proposition that court-imposed rules for the disposition of assets are to be enforced strictly in order to provide an adequate basis for comparison of offers, and to provide for a fair and efficient resolution of bankrupt estates. *See, e.g., United States v. Thwaites Place Associates*, 548 F.Supp. 94, 96 (S.D.N.Y.1982), *aff'd*, 722 F.2d 729 (2d Cir.1983) ("the terms or conditions prescribed for a judicial sale are binding on any purchaser"). However, the purpose of such rulings has been to ensure fair comparability between competing bids or to protect other bidders who have limited their bids to the announced terms. *See In re Table Talk, Inc.*, 53 B.R. 937, 943 (Bankr.D.Mass.1985) (allowing nonconforming bid "would be inequitable to ... an entity that bid the property in good faith, and highly irregular").

Here, these concerns are not implicated, or at least arise with less force. CNBC's bid had been received, and was known to

2. Telesat Cablevision, Inc. filed objections below to Dow's bid, and presses those objections on appeal, to observe that Dow's bid raises antitrust concerns as well. Specifically, it asserts that it has been refused access to programming controlled by one partner in Dow's operation, and that Dow's acquisition of FNN may give it unacceptable market power over the cable news industry. This court is not in a position to resolve that question now, nor even to evaluate fully the relative likelihood of antitrust difficulties with either bid. Nevertheless, it was error for the bankruptcy court to fail even to reach that question in considering which was the superior bid. Moreover, at first blush it seems likely that CNBC's bid, which would consolidate all presently-operating financial news cable services, would present more severe antitrust problems than would the acquisition of one of two such services by a rival entity.

the parties. Because its bid was already in place, and indeed had been since before the court announced any bidding rules and even before FNN filed under Chapter 11, CNBC cannot be said to have relied on its competitors' adherence to announced rules in submitting its bid; and since Dow was the sole competing entity, there was no risk of prejudice to other bidders.

Moreover, while this ruling does not depend on rejecting the bankruptcy court's finding that Dow's bid failed to comply with CNBC's, Dow's bid may in fact have been at least functionally equivalent to CNBC's. Because CNBC's "offer" in fact took the form of an executed contract, its sole provision for the "bidder's" withdrawal was the May 31 closing deadline. CNBC's offer had already been accepted in principle. Dow's bid also provided that once its offer was accepted, Dow could not withdraw prior to May 31, but provided an earlier deadline for acceptance of its bid in principle.

It is true that CNBC's bid by its own terms was to remain open through May 31. By contrast, Dow refused to risk being required to serve as a backup bid.

Even though this was true, however, requiring strict comparability, while understandably useful, particularly in situations such as this which require prompt action by the court, ought not be adhered to so uncompromisingly as to interfere with consideration of a bid which may well be of more benefit to the creditors than the bid that was accepted. Indeed, it is clearly the view of the creditors that Dow's bid was more favorable or at least that the auction should be allowed to proceed. Moreover, it could be argued that because CNBC had the protection of a break-up fee it is not reasonable to hold Dow to strict comparability as a condition of bidding, or of prevailing, and accordingly that some variation in the terminability of Dow's bid should not prove a fatal inconsistency with CNBC's bid.

In sum, when it was confronted with a bid offering a substantial cash premium over its sole competing bid, when that bid appeared less likely than its rival to result in delay or an injunction resulting from antitrust enforcement proceedings, and when the bid varied from the court's stated terms if at all only in one not obviously significant way, the court was obliged at least to consider the relative merits of the competing bids. Only by doing so could the court fulfill its paramount obligation of determining the highest and best bid, and thereby protecting the interests of FNN, its creditors and its equity holders. The disposition made was an abuse of discretion.

The appeal is granted. The order of the Bankruptcy Court disqualifying the bid of Dow Jones/Group W is reversed and the case is remanded to the Bankruptcy Court for action consistent with this opinion.