PER CURIAM:
Consumer News and Business Channel Partnership (“CNBC”) has an appeal before this court — to be heard on an expedited basis on May 10, 1991 — from the April 17,1991, order of the United States District Court for the Southern District of New York (Lasker, J.), 126 B.R. 152, reversing and remanding an order of the United States Bankruptcy Court for the Southern District of New York (Conrad, B.J.), which had disqualified a bid for the assets of Financial News Network (“FNN”) submitted by Dow Jones/Group W Television Co. (“Dow”) and approved a bid submitted by CNBC.
FNN ánd Dow have moved to dismiss CNBC’s appeal for lack of jurisdiction, and the motions have been considered on an expedited basis by the panel scheduled to hear the appeal. The motions to dismiss for lack of appellate jurisdiction are granted, and the appeal is dismissed.
*219 BACKGROUND AND PROCEDURAL HISTORY
FNN, now in chapter 11 bankruptcy, is a cable television company specializing in business reporting. CNBC is FNN’s only competitor. Both CNBC and Dow seek to purchase FNN’s assets. All parties and the courts below agree that FNN is a “wasting asset”; its Neilsen ratings have recently declined and many of its cable subscribers have given notice. Dow alleges that CNBC “has announced its intention to shut down FNN and absorb its subscribers.” CNBC vigorously denies this.
FNN began seeking acquisition offers in November 1990 before filing for bankruptcy. On February 11, 1991, FNN and Dow agreed in principle to a sale of FNN’s cable operations including broadcast equipment for $90 million. On February 22nd CNBC offered $105 million for the cable operations excluding the broadcast equipment. On February 25th FNN accepted CNBC’s offer, and they entered into an agreement with a $3 million “break-up” fee should FNN fail to close.
On March 1st FNN filed a voluntary petition for bankruptcy, and immediately sought the bankruptcy court’s approval of the FNN-CNBC contract. On March 6th, after hearing Dow’s objections that it had been unfairly excluded from the negotiating process, the bankruptcy court scheduled an auction of FNN’s assets. It required that competing bids exceed CNBC’s by $10 million, omit the break-up fee provision, and otherwise include all other terms in the FNN-CNBC contract “without change”.
On March 20th Dow submitted a letter bid for $115 million with a number of provisions, including one specifically representing that it met all the conditions of the FNN-CNBC contract.
The bankruptcy court conducted a hearing on March 27th at which the parties discussed how long Dow’s bid would remain open. On its face the bid was to remain open until 11:59 p.m. on April 3rd, the date for which the asset auction was scheduled. The bankruptcy court found that Dow “declined to extend the Dow/Group W offer until May 31, 1991 in order to conform with the terms of the [FNN-CNBC] Agreement and the Interim Order”, and this “refusal to conform” caused the Dow offer to be “disqualified” at the April 3rd auction hearing.
Immediately after Dow’s offer was disqualified on April 3rd, CNBC raised its bid to $115 million. On April 16th the bankruptcy court entered an order approving CNBC’s bid and memorializing the above. The bankruptcy court stated that this was a final order.
Dow and the Official Committee of Unsecured Creditors (“the Creditors”), as well as two secured creditors, appealed to the district court, opposed by both CNBC and FNN. On April 17th the district court reversed the bankruptcy court’s ruling disqualifying Dow's bid and awarding FNN’s assets to CNBC; it “remanded for the prompt determination of whether Dow’s or CNBC’s, or any other available bid, is the highest and best offer to the estate.” In re Financial News Network, Inc., 126 B.R. 152, 153 (S.D.N.Y.1991) (MEL) (“Lasker”). The district court agreed that the bankruptcy court’s decision was final, see Lasker at 155, but did not expressly indicate whether it considered its own order to be final or interlocutory.
On April 19, 1991, after Judge Lasker orally denied CNBC’s request for a stay of the district court’s order, CNBC filed a notice of appeal from the April 17th order. Pursuant to CNBC’s request, this court agreed to hear the appeal on an expedited basis and scheduled argument for May 10, 1991. Also on April 19th, counsel for FNN sent a letter by facsimile to Judge Conrad arguing that CNBC’s notice of appeal did not deprive the bankruptcy court of jurisdiction and urging him to proceed with the auction scheduled for April 23rd.
On April 22nd, after conducting a telephonic hearing, Judge Conrad issued an order declining to “take jurisdiction of Judge Lasker’s April 17, 1991 remand while an appeal of that Order is pending in the Circuit.” In re Financial News Net *220 work, Inc., No. 91 B 10891, slip op. at 3 (Bankr.S.D.N.Y. April 22, 1991) (FGC). Judge Conrad stated that he so ruled for “practical reasons”, id. at 29:
If we were to take jurisdiction today * * * and approve a purchase of Debt- or’s assets, we would in all likelihood be faced with the possibility of another appeal and the concomitant question of where the appeal would go * * *. Delay is, the only result this Court can see here if a sale of Debtor’s assets is conducted tomorrow. On the other hand, if CNBC obtains a reversal of Judge Lasker’s Order, there may be nothing left for this Court to conduct. Furthermore, we have * * * no doubt the Circuit will expeditiously resolve CNBC’s appeal.

Id.

On April 22nd and 23rd, respectively, Dow and FNN filed the instant motions. The Creditors also filed a brief in support of these motions on April 23rd. On Friday April 26th, CNBC filed its opposition papers (including a six-volume joint appendix), accompanied by a motion for leave to file an oversized memorandum of law. These papers have been considered in their entirety. Lastly, on April 26th, Security Pacific National Bank filed a memorandum of law in support of the motions.
DISCUSSION
This court recently noted that “[o]ur cases are in disarray on the jurisdictional question.” Germain v. Connecticut National Bank, 926 F.2d 191, 193, (2d Cir.1991). 28 U.S.C. § 158(a) provides as follows:
The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges * * *.
Additionally, 28 U.S.C. § 158(d) provides that:
The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsection[] (a) * * *.
While § 158(a) permits district courts “with leave of the court” to hear appeals from interlocutory orders, § 158(d) permits no such discretionary review by the courts of appeals. Appellate ■ jurisdiction under § 158(d) is confined to review of final decisions of the district courts. Germain, 926 F.2d at 196; see also In re Stable Mews Associates, 778 F.2d 121, 122 (2d Cir.1985). Moreover, § 158(d) “provides the exclusive means of court of appeals review of orders entered under Subsection (a).” Germain, 926 F.2d at 193 (precluding by negative implication jurisdiction over interlocutory orders under § 1292(b)).
“The nature of bankruptcy itself adds special consideration to an appellate court’s inquiry into finality.” Bowers v. Connecticut National Bank, 847 F.2d 1019, 1022 (2d Cir.1988). These considerations reflect bankruptcy proceedings’ “ongoing nature, frequently over long time periods and the fact that discrete claims are often resolved at various points during these lengthy proceedings.” In re Johns-Manville Corp., 824 F.2d 176, 180 (2d Cir.1987). Accordingly, “the finality requirement is less rigidly applied in bankruptcy than in ordinary civil litigation.” Id. at 179; accord In re Chateaugay Corp., 922 F.2d 86, 90 (2d Cir.1990). Orders in bankruptcy cases may be final if they resolve discrete disputes within the larger case. In re Chateaugay, 922 F.2d at 90; accord Stable Mews, 778 F.2d at 122.
In Bowers, an appeals panel of this court, after hearing argument on the merits and then receiving supplemental briefs regarding jurisdiction, dismissed the appeal for lack of jurisdiction. In so doing, the Bowers court established the two-step test that governs the instant motions to dismiss:
First, we must determine whether the underlying decision of the bankruptcy court was final or interlocutory * * *. If the decision was final, we must then ask whether the district court's disposition independently rendered the matter nonappealable.
*221 847 F.2d at 1022; accord In re Johns-Manville Corp., 920 F.2d 121, 126-27 (2d Cir.1990). In light of the principles set forth above, we hold that the bankruptcy court’s April 16th order was final, and that the district court’s April 17th order was interlocutory. Consequently, the instant motions to dismiss are granted.
A. The Bankruptcy Court Order Was Final.
Both the bankruptcy court and the district court considered the bankruptcy court’s April 16th order to be final. Judge Lasker did not adjudicate the appeal from it on a discretionary basis under the last sentence of § 158(a); indeed, he heard oral argument on the morning of the 16th even before Judge Conrad had entered his order. See Lasker at 155.
More importantly, however, the assumption of Judges Conrad and Lasker that the bankruptcy court’s order disqualifying Dow’s bid and approving the FNN-CNBC contract was final comports with the law. See In re Lionel Corp., 722 F.2d 1063 (2d Cir.1983) (assuming jurisdiction); In re Met-L-Wood Corp., 861 F.2d 1012, 1026 (7th Cir.1988) (confirmation order appeal-able as final order under 28 U.S.C. § 158(d)). Thus, the critical issue is whether the district court’s order was final or interlocutory.
B. The District Court Order Was Not Final.
Judge Lasker did not state whether he considered his order to be final or interlocutory. Judge Conrad, however, stated that “[i]t is clear in our view that Judge Lasker’s Order is interlocutory and not final.” We conclude that Judge Lasker’s remand order was interlocutory.
In Bowers we stated:
Even if the underlying bankruptcy court decision was final and appealable as of right, however, the second step of the jurisdictional inquiry would still lead to dismissal of this appeal. The district court directed further proceedings in the bankruptcy court to determine the validity of the note on which the Bank’s attachment was based. We have recently endorsed the prevailing view that courts of appeal lack jurisdiction over appeals from orders of district courts remanding for “ ‘significant further proceedings’ ” in bankruptcy courts. See In re Chateaugay Corp., 838 F.2d [59] at 61-62 [(2d Cir.1988)] (quoting In re Commercial Contractors, Inc., 771 F.2d 1373, 1375 (10th Cir.1985)).
847 F.2d at 1023 (emphasis added) (further citations and footnote omitted). We then concluded that, even if the bankruptcy court order before it had been final, “the district court’s remand for factual inquiry into the validity of the note vitiates appellate jurisdiction under section 158(d).” Id. Thus, the sole question presented by the instant motions is whether the proceedings for which the district court remanded the case to the bankruptcy court — i.e., “for the prompt determination of whether Dow’s or CNBC’s, or any other available bid, is the highest and best offer to the estate”, Lasker at 153 — constitutes “significant further proceedings” to deprive this court of jurisdiction.
The movants and the Creditors argue that the auction contemplated by the district court is “significant”. They do not provide much analysis in support of this argument, presumably because it is “plainly apparent” to them that they are significant. In re Chateaugay, 876 F.2d 8, 9 (2d Cir.1989) (per curiam). See Memorandum of Law of Dow at 13-14; Memorandum of Law of FNN at 4-5; and Brief for the Creditors at 7 n. 1. A more detailed analysis is contained in the memorandum of law of Security Pacific National Bank at 5-6:
* * * Judge Lasker directed the Bankruptcy Court to consider antitrust risks and to analyze the import of [Dow’s] refusal to serve as a backup beyond the court’s initial award of the assets to someone else. \Lasker ] at 9-10 [156]. While the FTC may have elected not to seek to enjoin a sale to CNBC, the state attorneys general have not yet reached a similar conclusion. Thus, the relative antitrust risks of the two bids must be evaluated and, as the Bankruptcy Court noted, it has yet to take evidence regard *222 ing these matters. (April 16, 1991 Order of Bankruptcy Court at ¶ 31). Pursuant to the District Court’s order, the Bankruptcy Court is to consider all these factors, any competing bids that it might receive, plus the fact that awarding the contract to [Dow] would entail payment of a “break-up” fee to CNBC. These are the sort of significant further proceedings that this Court has consistently held render an appeal to the Circuit Court impermissible.
We find this analysis to be persuasive.
CNBC, on the other hand, argues that the remanded proceedings are not “significant” because
* * * the remand was to conduct a new sale. Under these circumstances, where there is to be no further development of the record, the district court order is final * * *.
In fact, the contemplated proceedings are not “further” at all. They are “new” or “other” proceedings to sell the property * * *. There are no factual issues to be further developed which are germane to this appeal * * *. The enforcement of CNBC’s agreement, the requirements established by the bankruptcy court for any competing offer, and the disqualification of [Dow’s] non-complying bid will not be addressed, let alone resolved, by further proceedings in the bankruptcy court.
Memorandum of law of CNBC at 21-22. CNBC cannot cite, however, any passage in Judge Lasker’s decision supporting this last statement; the antitrust problems of CNBC’s bid — one of the main factors relied upon by Judge Lasker — are not addressed. CNBC’s other contention is specious. The Creditors are quite right that the exception advocated here by CNBC would devour the rule, for, read literally, all remand proceedings are “new”. An auction — especially one with antitrust ramifications and what are as yet non-uniform bids — is a significant proceeding.
The sort of remand proceedings that this court has previously found to be sufficiently significant to deprive this court of jurisdiction are not at great variance with the sale contemplated in Judge Lasker’s order. See Bowers, 847 F.2d at 62 (inquiry into validity of note); In re Chateaugay, 838 F.2d at 62 (modification of injunction restricting legal actions regarding pension funds). See also In re St. Charles Preservation Investors, Ltd., 916 F.2d 727, 729 (D.C.Cir.1990) (per curiam) (following Bowers; confirmation of elected trustee significant); In re Compton Corp., 889 F.2d 1104, 1107-08 (T.E.C.A.1989) (following Bowers; determination of claim amount requiring determination by administrative tribunal significant). The Compton court also added that “[t]he question is not whether the bankruptcy judge must undertake further significant proceedings, but whether significant proceedings between the parties exist upon remand.” Id. at 1107 (emphasis in original).
CONCLUSION
For all the foregoing reasons, and in light of the urgency of this matter due to the rapidly wasting value of FNN’s assets, the motions to dismiss CNBC’s appeal are granted.