**In re JEWEL TERRACE CORP., Debtor,**

**John A. ZACCARO, as trustee of Jewel Terrace Corp., Debtor, Plaintiff,**

**v.**

**BOWERY SAVINGS BANK et al., Defendants.**

**Civ. Nos. 80 3197, 80 3498.**

United States District Court, E. D. New York.

Jan. 23, 1981.

---

MEMORANDUM OF DECISION
AND ORDER

COSTANTINO, District Judge.

In the instant proceeding, the appellant, Dynamo Properties, Inc. ("Dynamo") is ap-

pealing from two orders dated October 7, 1980 and November 20, 1980 which were rendered by Bankruptcy Judge Saul Seidman. The appeal from the October 7th order was filed under docket number CV–80–3197 and the second appeal from the November 20th order was filed under docket number CV–80–3498. Each appeal will be referred to below by its respective docket number.[1]

In early 1980, Jewel Terrace Corp. ("Debtor") filed for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtor's major asset is its leasehold interest in a garden apartment complex in Queens, New York with over 750 units in 35 buildings located on 27 acres of land. All of the Debtor's stock is owned by a limited partnership known as Terrace Park Associates ("TPA"). John A. Zaccaro ("Trustee") was appointed trustee of the Debtor by the Bankruptcy Court in an order dated March 19, 1980. Shortly thereafter, Justice Ascione of the New York State Supreme Court, Kings County, appointed Max Fischer the Temporary Receiver ("Temporary Receiver") of all of the property of TPA.

In an agreement dated June 4, 1980, the Temporary Receiver acting on behalf of TPA, the sole stockholder of the Debtor, contracted to sell the Debtor's real property interests to Dynamo ("Dynamo contract"). Although there were several variables to be included in the purchase price, the basic sale price was $5,735,000 with a payout to creditors to be made over a ten year period. In addition to the $700,000 initial cash payment, the purchaser was to have assumed both the first and second mortgages on the Debtor's realty and was to have been granted a third purchase money mortgage for the balance.

The parties to the agreement then moved on notice before Bankruptcy Judge Joseph V. Costa for an order approving the sale, but in a hearing held before Judge Costa on June 30, 1980, the authority of the Temporary Receiver to sell the property was questioned by both the Trustee and several creditors. Judge Costa reserved decision on the Temporary Receiver's approval application, but noted that he would not consider the approval application under any circumstances unless the Debtor agreed to the sale. (*See* Transcript of June 30, 1980 at 109.) The Debtor neither joined in this application nor agreed to the sale. Before rendering a decision on the approval application and before any new court proceedings transpired, Judge Costa died and Judge Seidman was assigned to the case.

In September of 1980, Dynamo, as a previous bidder for the Debtor's realty, made a motion before Judge Seidman requesting the following rulings: (A) that the June 30th hearing before Judge Costa was duly concluded; (B) that until Judge Seidman rendered a decision on its approval application no additional sale contracts were to be heard by the Bankruptcy Court; and, (C) that the Temporary Receiver's contract with Dynamo be approved. In a hearing on October 7, 1980, Judge Seidman ruled from the bench that the Temporary Receiver had no authority to contract for the sale of the Debtor's property, (*see* Transcript of October 7, 1980[2] at 58) and denied the relief requested in Dynamo's motion. Judge Seidman's decision at the October 7th hearing is the subject of the first appeal under CV–80–3197.

Subsequent to these transactions, the Trustee filed an application with the Bankruptcy Court seeking approval for the sale of the Debtor's realty to Mr. Peter Feinberg. In this contract with Feinberg (the "Feinberg contract") dated September 22, 1980, the purchase price was estimated to be $5,400,000, but was later increased to

---

1. Since their respective filing, these two actions have been consolidated under docket number CV–80–3197. For the purposes of clarity, however, the actions will be referred to in the text by the original docket numbers.

2. The record on appeal mistakenly lists the October 7th hearing as having taken place on October 3, 1980.

$5,600,000 with the entire amount to be paid in cash. The proceeds from the sale are expected to be sufficient to satisfy all outstanding claims and in addition to return a small surplus to the Debtor.

Dynamo was the sole objector to the Feinberg contract. It contended that since its appeal from Judge Seidman's October 7th order was still pending, the Bankruptcy Court should not entertain any further sale applications until a final decision is rendered by the District Court. After dismissing Dynamo's objections, Judge Seidman first, limited competitive bidding on the Feinberg contract while the Trustee gave notice of the sale to all interested parties, and then in an order dated November 20, 1980, approved the Feinberg contract for a cash price of $5,600,000. In CV–80–3498, Dynamo appeals from the November 20th orders of Judge Seidman approving the Feinberg contract and barring competitive bidding on that contract. For reasons set forth below, the appeals under both CV–80–3197 and CV–80–3498 are dismissed and the decisions of the Bankruptcy Court are affirmed.

■ With regard to issues on appeal under CV–80–3197, it is Dynamo's position that the June 30th proceeding before Judge Costa dealing with the offer to purchase the Debtor's realty was duly concluded, that no final decision regarding Dynamo's contract was rendered, and that until such time as a decision was made, no further sales contracts should have been considered by the Bankruptcy Court. This court disagrees. First, at no time during the June 30th hearing did Judge Costa state that the Dynamo contract was the sole offer under consideration. To the contrary, Judge Costa was apparently considering several different courses of action, (see Transcript of June

30, 1980 at 96–107), and thus, there is no authority for this court to conclude that the subjects discussed at the June 30th hearing were at an end. Indeed, Judge Costa stated that he would not even consider the Dynamo contract absent the approval of the Debtor which was never forthcoming. (*See* Transcript of June 30, 1980 at 109.)

■ Second, as to the efficacy of the Dynamo contract, Judge Seidman ruled, and this court concurs, that the court has no power to approve a sales contract signed solely by the Temporary Receiver of the sole shareholder of the Debtor. (*See* Transcript of October 7, 1980 at 55, 58.) Under ordinary circumstances, only the board of directors with the approval of the shareholders has the authority to sell the assets of a corporation, N.Y.Bus. Corp.L. § 909, and when a trustee in bankruptcy has been appointed in a Chapter 11 proceeding, the trustee has control over the corporate assets of the debtor and must agree to the transfer. 11 U.S.C. §§ 323, 363 and 541.

Dynamo contracted with a party who had no authority to act on behalf of the Debtor, and thus, the contract that was signed is in effect a meaningless document. In relation to the Debtor, Dynamo is no more than an unsuccessful bidder who put its offer before the court on June 30th. As such, it has not been aggrieved by the Bankruptcy Court's rejection of the offer, and consequently Dynamo has no standing before this court to appeal any adverse ruling of the Bankruptcy Judge. 1 *Collier on Bankruptcy* ¶ 3.03[6][b] (15th ed. 1979). *See In re Harwald Co.*, 497 F.2d 443 (7th Cir. 1974); *Imperial Bowl v. Roemelmeyer*, 368 F.2d 323 (5th Cir. 1966); *In re Realty Foundation*, 75 F.2d 286 (2d Cir. 1935); *Matter of Rea Holding Corp.*, 447 F.Supp. 167 (S.D.N.Y. 1978).[3]

**3.** The court is mindful that it has based its decision regarding Dynamo's standing on the basis of Section 39(c) of the Bankruptcy Act and that when Congress passed the new Bankruptcy Code, Section 39(c) with its "person aggrieved" wording was dropped from the statute. Regardless, this court believes that there must be a standard by which to gauge a person's right to appeal and it has therefore adopted the "person aggrieved" standard used previously under the Act. *Accord,* 1 *Collier on Bankruptcy, supra,* ¶ 3.03[6][b].

In addition, even if this court were to lend some credence to Dynamo's position, Dynamo has no sales contract remaining in effect because the Temporary Receiver rescinded the contract. (*See* Transcript of October 7, 1980 at 59.) Moreover, the Dynamo contract by its own terms has expired. (*See* paragraph 6(a) of the Dynamo contract.) Since no enforceable contract exists, Dynamo has no actual grievance which can be adjudicated by this court, and thus, the appeal must be dismissed.

Turning to the appeal under CV–80–3498, Dynamo objects to Judge Seidman's order which limited competitive bidding on the Feinberg contract. To be aggrieved under the bankruptcy laws as a result of Judge Seidman's order, Dynamo in its status as an unsuccessful bidder for the Debtor's realty must show that its interest is within the zone of protectible interests under the bankruptcy laws, to wit, that the sale was either fraudulent or unfair, and that the property was being sold for a sum below its proper price. *In re Harwald Co., supra*, 497 F.2d at 444; *see Matter of Rea Holding Corp., supra*.

■ Dynamo, however, has failed to make any such showing. First, the property is being sold for a price that exceeds the initial estimation of its fair market value. Second, the property is being sold for a cash purchase price of $5,600,000. This price is not only likely to meet all outstanding obligations to creditors, but will also probably leave a surplus to be turned over to the Debtor. Alternatively, the less advantageous Dynamo contract calls for an assumption of the first two mortgages, the granting of a third purchase money mortgage, and a payout to the rest of the creditors over a ten year span. It is clear to this court that the Trustee has fulfilled his fiduciary duties by entering into an agreement which more than adequately protects the interests of the shareholders and the creditors of the Debtor. Since Dynamo has failed to show that it is within the zone of protectible interest, it has not been aggriev-ed in an equitable sense by Judge Seidman's orders regarding the Feinberg contract, and thus, has no standing to present its claim before this court.

■ There is an additional problem which precludes this court from ruling on Dynamo's appeal from the November 20th order of Judge Seidman: Dynamo never obtained a stay of the order approving the Feinberg contract as required by Bankruptcy Rule 805 and Section 363(m) of the Bankruptcy Code, 11 U.S.C. § 363(m). Dynamo cannot at this point attempt to challenge the approval of the Feinberg contract on appeal without obtaining a stay and affording the parties the requisite notice as required by law. Thus, on this ground alone, Dynamo's appeal must be denied. *See Matter of Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir. 1977).

■ Moreover, even addressing the points raised in this appeal, this court finds no merit to Dynamo's position. Dynamo's main contention is that Judge Seidman abused his discretion in preventing competitive bidding on the Feinberg contract. Although sales are usually held at public auction, there are circumstances where, in the discretion of the Bankruptcy Judge, property can be sold privately. Eastern District Bankruptcy Rule 15(c). This court believes that this instance is subject to such an exception and Judge Seidman did not abuse his discretion in authorizing this private sale. The cash price offered by Feinberg and the terms of the sale are clearly the most advantageous to the creditors since, in all probability, the creditors will be fully recompensed once the money is received. Moreover, the sale will be consummated with all due expediency whereas any other sale could be prolonged indefinitely. While no court should succumb to the dictates of a purchaser, Judge Seidman in balancing the interests of the Debtor in avoiding the additional expense for the upkeep of the premises against the propriety of a private sale under Mr. Feinberg's terms properly ruled in favor of the private sale since this was

the most advantageous arrangement for both the creditors and the Debtor.

 Finally, Judge Seidman's ruling regarding the competitive bidding did not completely prohibit the consideration of other bids. He stated at the November 20th hearing that he would accept any bid if the bid was more than the amount offered by Feinberg, (*see* Transcript of November 18, 1980 at 59–60). In fact, when he asked Dynamo whether it was prepared to meet Mr. Feinberg's price, Dynamo declined. (*See* Transcript of November 18, 1980 at 44–45.) Having been given the opportunity to bid on the property, Dynamo cannot at this juncture object to the sale of the Debtor's property interest by alleging that Judge Seidman improperly restricted competitive bidding. This argument is neither logical nor consistent, and consequently will not be accepted by this court. In conclusion, therefore, on both the standing issue and the merits, Dynamo's appeal from Judge Seidman's November 20th order is denied and the decision of the Bankruptcy Court is affirmed.

Appeals dismissed.