**Denzil I. HALL, James C. Hammond, Harold M. Johnson, Joseph H. McVoy, Dallas C. Smith and Phillip Vaughn, Plaintiffs,**

v.

**SIMKINS INDUSTRIES, INC., Defendant and Third-Party Plaintiff,**

v.

**ST. REGIS PAPER COMPANY, Third-Party Defendant.**

Civ. A. C81–1868A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 22, 1983.

H. Lowell Hopkins, Patrick J. McKenna, Atlanta, Ga., for plaintiffs.

Ann Miller, Philadelphia, Pa., James J. Thomas, Michael M. Ozburn, Darryll Love, Allen Willingham, Atlanta, Ga., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This is an action by six (6) former employees of Simkins Industries, Inc. (hereinafter "Simkins") who claim that they are entitled to vacation pay and severance pay from Simkins as a result of Simkins' termination of their employment at various times between December 31, 1980 and January 23, 1981. The action was originally instituted in the Superior Court of Cobb County, Georgia, but was removed to the federal court by defendant Simkins based on diversity of citizenship. Simkins later filed a third-party complaint against St. Regis Paper Company (hereinafter "St. Regis") alleging that St. Regis is responsible to Simkins for any liability which Simkins may have to its employees for severance pay which "accrued" to its employees prior to November 5, 1979. The allegations in the third-party complaint are based on paragraph 8(I)(n) of the 1979 sales contract between Simkins and St. Regis in which St. Regis sold to Simkins its manufacturing operations at Marietta, Georgia, where the plaintiffs were employed. This clause in the sales contract and the third-party complaint are the basis for the cross motions for summary judgment filed by Simkins and St. Regis, which are currently before the court.

### FINDINGS OF FACT

1.

Prior to November 5, 1979, the plaintiffs were employed by St. Regis at its folding carton plant located in Marietta, Georgia.

2.

On or about November 5, 1979, an Agreement of Sale was entered into between Simkins and St. Regis, under which and pursuant to which St. Regis sold to Simkins its folding carton plant located in Marietta, Georgia, along with other assets, operations and property.

3.

In connection with the sale of the folding carton plant by St. Regis to Simkins, Simkins hired and retained the plaintiffs as employees during the period from on or about November 5, 1979 until their employment with Simkins was terminated by Simkins.

4.

Plaintiffs claim that following the purchase of the folding carton plant, Simkins promised to continue all benefits formerly maintained by St. Regis, as though there had been no change in ownership or management, and therefore Simkins adopted St. Regis' policies with respect to vacation and severance benefits.

5.

Plaintiffs claim that they are entitled to vacation and severance benefits in accordance with Simkins' alleged promise to continue said benefit programs formerly maintained by St. Regis.

6.

Plaintiff Denzil I. Hall was employed by St. Regis at its plant in Marietta, Georgia from October 2, 1964 until November 5, 1979. On November 5, 1979 Simkins hired and retained the plaintiff as an employee

until his position was eliminated. On January 23, 1981 Simkins terminated plaintiff's employment without offering him another job.

### 7.

Plaintiff James C. Hammond was employed by St. Regis at its plant in Marietta, Georgia, from April 1, 1977 until November 5, 1979. On November 5, 1979 Simkins hired and retained the plaintiff as an employee until his position was eliminated. On January 5, 1981 Simkins terminated plaintiff's employment without offering him another job.

### 8.

Plaintiff Harold M. Johnson was employed by St. Regis at its plant in Marietta, Georgia from September 1, 1968 until November 5, 1979. On November 5, 1979, Simkins hired and retained the plaintiff as an employee until his position was eliminated. On January 23, 1981 Simkins terminated plaintiff's employment without offering him another job.

### 9.

Plaintiff Joseph McVoy was employed by St. Regis at its plant in Marietta, Georgia from December 13, 1948 until November 5, 1979. On November 5, 1979 Simkins hired and retained the plaintiff as an employee until his position was eliminated. On December 31, 1980 Simkins terminated plaintiff's employment without offering him another job.

### 10.

Plaintiff Dallas C. Smith was employed by St. Regis at its plant in Marietta, Georgia from March 1, 1969 until November 5, 1979. On November 5, 1979 Simkins hired and retained the plaintiff as an employee until his position was eliminated. On January 23, 1981 Simkins terminated plaintiff's employment without offering him another job.

### 11.

Plaintiff Phillip Vaughn was employed by St. Regis at its plant in Marietta, Georgia from November 25, 1950 until November 5, 1979. On November 5, 1979, Simkins hired and retained the plaintiff as an employee until his position was eliminated. On January 23, 1981 Simkins terminated plaintiff's employment without offering him another job.

### 12.

Plaintiffs have computed their damages based on St. Regis' policies regarding vacation and severance benefits which Simkins allegedly adopted and which benefit programs Simkins allegedly promised to continue.

## CONCLUSIONS OF LAW

The issue presented to the court is whether St. Regis, the third-party defendant, must indemnify Simkins, the defendant and third-party plaintiff, for any liability which Simkins may have to the plaintiffs for severance pay which "accrued" to the plaintiffs prior to November 5, 1979.[1]

Simkins relies on paragraph 8(I)(n) of the Sales Agreement between itself and St. Regis, dated November 5, 1979, in support of its third-party complaint and its motion for summary judgment. Paragraph 8(I)(n) provides: "Seller agrees that termination or transfer of employment of its employees including the responsibility for the payment of severance benefits, if any, in accordance with Seller's severance policy will be the sole responsibility of Seller." Simkins contends that based on this clause St. Regis is partially responsible for the payment of severance benefits to the plaintiffs, specifically, for the payment of any severance benefits which "accrued" to the plaintiffs in connection with their employment with St. Regis prior to November 5, 1979.

Simkins further argues that in addition to assuming sole responsibility for payment

---

**1.** The court notes that there is no dispute as to who is responsible for any alleged vacation pay benefits which might be owed. By failing to make an allegation against St. Regis in the third-party complaint regarding this issue, Simkins has implicitly conceded that St. Regis is not responsible for any vacation pay benefits which might be owed to the plaintiffs.

of severance benefits accrued to its employees prior to the sale date, St. Regis made certain representations with respect to its obligation to Simkins. Simkins refers to paragraphs 12(b) and (c) of the Sales Agreement which state in pertinent part:

12. *Indemnities-Assumption of Liabilities*

(b) With the exception of the assignment of the leases attached hereto as Exhibits B–1 and F; and the subleases attached hereto as Exhibits B–2 and C and the contracts, licenses, commitments and purchase orders for the sale of products to customers on hand at each of the Operations or orders for materials and supplies outstanding at each of the Operations or other agreements as listed in Exhibit F hereto, Buyer does not assume any other contracts, liabilities or obligations of Seller. Seller agrees to indemnify and hold Buyer harmless from and against all obligations, liabilities, claims, costs and expenses (including reasonable attorneys' fees) incurred in the period prior to the Closing Date with respect to any of the leases, licenses, contracts, commitments, or other agreements as listed on Exhibit F hereto and purchase orders assumed by Buyer pursuant to this subsection (b) of Section 12. Buyer agrees to indemnify and hold Seller harmless from and against all obligations, liabilities and claims incurred in the period after the Closing Date with respect to any of the leases, licenses, contracts, commitments and purchase orders assumed by Seller pursuant to this subsection (b) of Section 12;

(c) Seller agrees to indemnify, hold harmless and defend Buyer against any and all claims, costs and expenses (including reasonable attorneys' fees), if any should result, made against Buyer insofar as such claims arise out of or are based upon Seller's conduct of the Operations prior to the Closing Date.

Based on these two paragraphs, Simkins contends that St. Regis warranted that it would indemnify Simkins for any claims which might subsequently be asserted against Simkins.[2]

St. Regis, on the other hand, disputes Simkins' interpretation of paragraph 8(I)(n) of the sales contract and in support of its motion for summary judgment argues that paragraph 8(I)(n) must be read in conjunction with several other paragraphs in order to properly interpret that paragraph. St. Regis directs the court to paragraphs 8(I)(m), 8(II)(e), and 12(d).

Paragraph 8(I)(m) provides:

(m) Seller agrees that with respect to each salaried and hourly-paid employee whose employment with Seller is terminated as a result of the transaction contemplated herein that it will take all steps and execute all documents as are necessary or appropriate to provide, and will in fact provide, for the pension benefits for such employees in accordance with the terms of its present pension and retirement plans, and as may be required by the Employee Retirement Income Security Act, the Internal Revenue Service and the Secretary of Labor;

Paragraph 8(II)(e) states:

Buyer will advise Seller in writing, no later than the date of this Agreement of all personnel employed in connection with the operation of the Assets not to be employed by it;

and Paragraph 12(d) states:

(d) Buyer agrees to indemnify, hold harmless and defend Seller against any and all claims, cost and expenses (including reasonable attorneys' fees), if any should result, made against Seller insofar as such claims arise out of or are

---

**2.** Simkins also directs the court's attention to paragraph 17 of the sales agreement which states that the warranties of paragraph 8(I)(n) shall remain effective for 24 months after the closing. St. Regis, in response to this argument, concedes the interpretation of that paragraph and does not dispute that this case was brought within the appropriate 24 months period. St. Regis only disputes Simkins' interpretation of paragraph 8(I)(n) of the sales contract. Therefore, the court need not address any issue with respect to paragraph 17.

based upon Buyer's conduct of the Operations after the Closing Date.

Based on a reading of these three clauses in conjunction with paragraph 8(I)(n), St. Regis argues that pursuant to the express terms of the contract, it is obvious that the clause in paragraph 8(I)(n) was designed to assure that St. Regis would bear the sole responsibility for the termination or transfer of any of its employees at the Marietta operation who were not hired and retained as employees by Simkins. In other words, if any such employee was not to be transferred or otherwise retained as an employee by Simkins, then St. Regis would have the sole responsibility for settling any severance pay claims of any such employee. St. Regis further argues that Simkins gave its assurance that St. Regis would have no liability for claims which arose out of Simkins' operations of the plant after the closing date. *See* paragraph 12(d) of the sales contract, *supra.*

■ The construction and interpretation of a written contract is a matter of law for the court and is therefore properly subject to disposition by summary judgment. *Sims' Crane Service, Inc. v. Reliance Insurance Co.,* 514 F.Supp. 1033, 1036 (S.D. Ga.1981); *King v. Gilbert,* 445 F.Supp. 479, 483 (N.D.Ga.1977), *aff'd,* 569 F.2d 398 (5th Cir.1978). In construing the contract, under Georgia law, the court must ascertain the intent of the parties, *Hull v. Lewis,* 180 Ga. 721, 180 S.E. 599 (1935), and in so doing, must give said contract a fair and reasonable construction. Furthermore, in making a reasonable interpretation of the contract, "the construction which will uphold a contract in whole and in every part is preferred, and the entire contract should be looked to in arriving at the construction of any part." *Ga.Code Ann.* § 20–704(4). Moreover, where a paragraph in the contract is ambiguous, the court has the duty to resolve such ambiguity by the application of the pertinent rules of construction,

and only when such ambiguity remains unsolved after the application of such rules of construction does the ambiguity raise a question of fact for the jury. *See Runyan v. Economics Laboratory,* 147 Ga.App. 53, 248 S.E.2d 44 (1978); *Kennedy v. Brand Banking Co.,* 152 Ga.App. 47, 262 S.E.2d 177 (1979).

■ In order to ascertain the intent of the parties, the court starts first with the interpretation of the clause at issue—paragraph 8(I)(n). In paragraph 8(I)(n) the words "its employees" are unambiguous and refer to the seller's employees, namely St. Regis' employees. Thus, a reasonable interpretation of that paragraph is that St. Regis will be solely responsible for the payment of severance benefits to those persons employed by St. Regis who are terminated and not offered another job. In the case at bar, while it is true that the plaintiffs were terminated and not offered another job, they were not employees of St. Regis at the time of their termination, but instead were employees of Simkins and were terminated by Simkins. Furthermore, the words "sole responsibility of Seller" indicate that St. Regis is solely responsible for the payment of severance benefits to its employees. Simkins would have the court adopt the illogical argument that "sole responsibility" means responsibility for only those severance benefits which "accrued" to the plaintiffs prior to November 5, 1979. That argument is wholly without merit because severance benefits do not accrue until the time of termination, and the plaintiffs were not terminated prior to November 5, 1979, but instead were terminated in December 1980 and January 1981.[3] Simkins already implicitly concedes by the allegation in its third-party complaint that St. Regis is not liable for any severance benefits which "accrued" subsequent to November 5, 1979.

---

**3.** The court does note that there appears to be a controversy as to whether the formula listed in St. Regis' severance benefits policy, which Simkins allegedly adopted and promised to continue, should be used in calculating the severance

payments each plaintiff was to receive. However, this dispute has nothing to do with the express terms of the contract relating to the obligations and representations of Simkins and St. Regis under the sales contract.

Based on the express terms of paragraph 8(I)(n), which are not ambiguous, the court concludes that that paragraph is inapplicable to the instant case, and therefore St. Regis cannot be held liable to indemnify Simkins for any severance benefits which may be owed to the plaintiffs.

Assuming arguendo that paragraph 8(I)(n) is somewhat ambiguous, the court must then look to the language of the entire contract in an attempt to arrive at a reasonable interpretation of that paragraph. It is evident from a reading of the sales contract in its entirety that the parties' intentions were that St. Regis would be responsible for any liabilities arising before the sale and that Simkins would be responsible for any liabilities arising after the sale. Paragraph 12(c) and (d) of the sales agreement make it even clearer that this was the intent of the parties. Paragraph 12(c) provides that the seller agrees to indemnify the buyer against any claims which arise out of or are based on the seller's conduct of the operations prior to November 5, 1979, and paragraph 12(d) states that the buyer agrees to indemnify the seller for any claims which arise out of or are based on the buyer's conduct of operations subsequent to November 5, 1979. In fact, St. Regis directed the court to paragraph 12(d) and Simkins cited paragraph 12(c) in support of their respective motions for summary judgment.

The court finds paragraph 12(d) to be totally inapplicable to this case since the plaintiffs did not sue St. Regis for the severance benefits which are allegedly owed to them. However, the court does find paragraph 12(C) to be applicable here. Simkins claims that this paragraph supports its position that St. Regis is liable because St. Regis agreed to indemnify Simkins for any claims brought against it. However, the remainder of that paragraph states, "[for any] claims [which] arise out of or are based on the seller's conduct of the operations prior to the Closing Date." Apparently Simkins, in citing this paragraph, is asserting that the plaintiffs' claims are based on St. Regis' conduct of the operations prior to November 5, 1979—possibly Simkins is referring to St. Regis' policy regarding severance benefits.

This argument must fail. The plaintiffs' claims for severance benefits could only accrue at the time of the plaintiffs' termination from employment, and but for said terminations by Simkins in December 1980 and January 1981, the plaintiffs' claims could not have arisen. Thus, the plaintiffs' claims are clearly based on Simkins' conduct of the operations after November 5, 1979, and not on St. Regis' conduct of the operations prior to that date.[4] Paragraph 12(c) therefore specifically supports the court's conclusion that St. Regis is *not* liable to Simkins.

Finally, aside from ascertaining the general intentions of the parties through a reading of the entire sales agreement, in construing paragraph 8(I)(n) the court believes that two specific paragraphs should be read in conjunction with paragraph 8(I)(n) in order to arrive at a reasonable interpretation of that paragraph. Those paragraphs are 8(I)(m) and 8(II)(e).

The phrase in paragraph 8(I)(m)—"employees whose employment with seller is terminated as a result of the transaction contemplated herein"—when read in conjunction with 8(I)(n), suggests that the employees referred to in paragraph 8(I)(n) are specifically those employees whose employment is terminated as a result of the sale of the plant. Thus, pursuant to paragraph 8(I)(n), if those employees were terminated (i.e., not hired by Simkins), then St. Regis would have sole responsibility for the payment of any severance benefits owed to those employees.

Paragraph 8(II)(e), *see* p. 8, *supra,* also suggests this result and indicates St. Regis' intention to ascertain the names of its employees who would not be hired and retained by Simkins and who might be seeking pension, severance, and/or vacation benefits as a result of such termination.

Based on a reading of the entire contract, and specifically, those paragraphs to

**4.** *See* Note 3, *supra.*

which the court herein referred, the court concludes that paragraph 8(I)(n) of the sales agreement means that St. Regis agrees to be solely responsible for the payment of severance benefits to any of its employees who are terminated (not hired by Simkins) as a result of St. Regis' sale of the Marietta folding carton plant to Simkins on November 5, 1979.

Accordingly, paragraph 8(I)(n) is inapplicable to the case *sub judice* and St. Regis cannot be held responsible for any portion of the alleged severance benefits which may be owed to the plaintiffs.

## CONCLUSION

It is hereby ORDERED that St. Regis' motion for summary judgment is GRANTED, and Simkins' motion for summary judgment is DENIED. The third-party complaint is DISMISSED.

There being no just reason for delay, the clerk is DIRECTED to enter judgment for the third-party defendant and against the third-party plaintiff.