In re The **HIGHWAY EQUIPMENT COMPANY, INC., Debtor.**

**Bankruptcy No. 1–85–01667.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 26, 1986.

Don R. Gardner, Keating, Muething & Klekamp, Cincinnati, Ohio, for debtor.

David S. Levine, Clark & Eyrich, Cincinnati, Ohio, for Crocker Commercial Services.

Thomas R. Noland, Dayton, Ohio, for Unsecured Creditors Committee.

## DECISION AND ORDER RE SALE OF REAL ESTATE

BURTON PERLMAN, Bankruptcy Judge.

At Cincinnati, in said District, on the 26th day of March, 1986.

Debtor in this Chapter 11 case had been a dealer in earth moving equipment. In connection with that business, it was the owner of a substantial tract of real estate. Debtor's building occupied some 10 acres of a total of approximately 32 acres. Debtor received an offer to purchase a 6.76 acre parcel (hereafter "subject real estate") of the balance. Debtor responded with a counteroffer and now has before it a modified offer from the prospective purchaser. Debtor is not agreeable to accepting the offer. Crocker Commercial Services, Inc. ("Crocker"), debtor's pre- and post-filing principal lender, disagrees with this course of conduct and has filed an application for an order to compel debtor to accept the outstanding offer.

In the application, Crocker says that debtor has refused to make the current sale, "notwithstanding the belief of both your applicant and counsel for the Unsecured Creditors' Committee that the sale would be in the best interest of all creditors and that the price offered for the purchase is reasonable, fair and adequate." Further, in support of its application, Crocker says that debtor's counteroffer "includes specific demands that the prospective seller include covenants in any deed limiting the use of the property in such a manner that makes it virtually impossible to sell the property for a reasonable price." Applicant concludes its application by the assertion that the failure of debtor to accept the offer prevents debtor from pursuing an orderly liquidation of assets as mandated by our order of January 3, 1986.

Debtor filed a response to Crocker's objection, asserting first that the offer price is significantly less than the market value of the subject real estate. Secondly, debtor says that the sale and development of the subject real estate will have a significant impact on the development and market value of the balance of the real estate held by debtor for sale, and this "necessitates reasonable restrictions concerning use, access, architectural design and traffic, etc." Debtor concludes by stating that, in the exercise of its reasonable business judgment, the offer is not in the best interests of the estate, its creditors and shareholders.

The matter came on for hearing. At the hearing, Crocker presented the testimony of an appraiser, Jerry Devitt, as well as Mr. Devitt's appraisal report. His appraisal was that the fair market value of the subject real estate is $300,000.00. This figures out to be something in excess of $44,000.00 per acre. This valuation was not contested. Further, there was no contest that appraisal values are not exact, and it was opined that the offer for the subject property in amount was within the range suggested to be acceptable by the appraisal.

The real bone of contention here has to do not with valuation, though debtor contends that the offer presently on the table is woefully low. Rather does it have to do with conditions that debtor insists must be a part of any sale of the subject property in order to be certain that the balance of the real estate which is for sale be sold most advantageously. Debtor presented substantial evidence that it was the opinion not merely of the debtor, but rather of competent real estate counsel, whose advice debtor was following, that such conditions should be imposed.

Crocker responds to this position by pointing out that a sale of the main building which occupies a 10-acre tract is closest to the subject real estate and presumably would be that most affected by it. The party that has contracted to purchase that property has not, however, placed any condition in his contract of purchase limiting the manner of use of the subject real estate.

A threshold question as we approach the resolution of the controversy before us is what standard is to be applied by the court. Debtor contends that the court has no authority to order it to make a sale of its property. Debtor's basis for this contention is that the Bankruptcy Code nowhere confers such authority on the court. Debtor made reference to a decision by Judge Newsome of this court which debtor felt supported its position. That decision was in *In re Broadcast Management, Inc.,* —— B.R. —— Case No. 1–83–00990 (Bankr.S.D. Ohio W.D. 7–25–84). We have considered that holding. It contains no comfort for debtor because the sale there in question arose after confirmation of the plan. That before us is pre-confirmation, a time when the case is fully before us. This is a profound difference for purposes of legal analysis. Further, Judge Newsome's decision went more to the merits of the sale than a clear-cut holding on the authority of the court to order a sale against the wishes of a Chapter 11 debtor.

Crocker responds that the authority is to be found in § 105 of the Bankruptcy Code or, in the alternative, in the terms of an order entered in this case on January 3, 1986. That order provides that "any further sales of any property of Debtor ... shall be made in a commercially reasonable manner." Clearly, this second alternative cannot accomplish the end sought by Crocker. It could provide the basis for an objection to a sale proposed by debtor but, by its very terms, cannot be extended to mandate a sale which debtor does not wish to carry out.

■ We do think, however, that there is the power in this court to regulate the conduct of a debtor which, after all, occupies the position of a trustee in bankruptcy, so that it not act detrimentally to the interests of creditors. An appropriate standard may be derived from *In re Lionel Corporation,* 722 F.2d 1063 (2nd Cir.1983). While in that case debtor was proposing to sell property of the bankruptcy estate over the objection of the S.E.C., facts different from those before us, there was a discussion of the standard to be applied by the bankruptcy judge in reaching a decision on the objection to sale. In that case, the court concluded (at p. 1070):

> The history surrounding the enactment in 1978 of current Chapter 11 and the logic underlying it buttress our conclusion that there must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b).

By the same token, we hold that the bankruptcy judge may sustain a debtor in its refusal to sell property despite the insistence of an important creditor to the contrary, where the debtor shows a valid business justification for its course of conduct. To succeed on its present application then, Crocker has the burden of showing that debtor is acting without a valid business justification.

■ After hearing the evidence, we have reached the conclusion that Crocker has failed to sustain this burden. All that Crocker has shown is that an offer has been received in an amount which is not unreasonable. Debtor has countered this by showing that it has additional real estate in the same vicinity for sale, that it is requiring what we find as a fact to be reasonable restrictions to be imposed upon the use of the subject real estate by a purchaser, but that the present offerer of the subject real estate is unwilling to accept such restrictions. Further, debtor has shown that the requirement of such restrictions is not arbitrary, but is reasonable, because in the opinion of competent real

estate counsel, a deleterious use of the subject real estate could be detrimental to the sale of the remaining real estate owned by debtor.

Accordingly, Crocker's application is denied.

So Ordered.