**In re ATLANTA PACKAGING PRODUCTS, INC., Debtor.**

**CELLO BAG COMPANY, INC., Plaintiff,**

**v.**

**CHAMPION INTERNATIONAL CORPORATION and David W. Cranshaw, Trustee, Defendants.**

**Bankruptcy No. 87–00603. Adv. No. 87–0200A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 18, 1988.

10. *See, In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 376, 389 (Bankr.E.D.Pa.1987), *aff'd,* 75 B.R. 819 (E.D.Pa.1987).

Benjamin J. Abney, Tip Carroll, Abney, Tate and Mallernee, Atlanta, Ga., for plaintiff.

Jesse H. Austin, III, Powell Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This is a dispute between Cello Bag Company, Inc. ("Cello"), a disappointed potential purchaser of the debtor's assets, and Champion International Corp. ("Champion"), a creditor with a security interest in some of the debtor's assets. Cello alleges that it had a contract with Champion to purchase the debtor's assets before the debtor's involuntary Chapter 7 case was filed. Cello unsuccessfully sought to stop a sale by the Chapter 7 Trustee to a party who offered more money to buy more assets through a Court-approved sale. The Court approved the sale proposed by the Trustee over Cello's objections. Cello now seeks to recover the amount of money received by the Trustee from the sale over and above the lower price Cello offered to Champion.

Cello's complaint alleges a breach of contract. There are no allegations in the complaint of fraud or collusion, and there is no allegation of any impropriety in the bankruptcy proceeding. Simply put, Cello argues that the filing of the involuntary bankruptcy proceeding and the appointment of a trustee should not have affected its alleged contract with Champion to purchase the debtor's assets at a price much lower than the price obtained by the Trustee, and Cello argues that it, not the creditors, should have benefitted from the Trustee's ability to secure a sale of the debtor's assets at a substantially higher price than Cello ever offered to pay.

The defendant Champion filed a motion for summary judgment. By previous order dated September 27, 1987, the Honorable A. David Kahn dismissed counts II, III and IV of the Complaint seeking specific performance, injunctive relief and declaratory relief as moot, since the assets were sold and were no longer property of the debtor's estate.[1] All that remains are Cello's claims against Champion for damages for the breach of an alleged contract between Champion and Cello whereby Cello alleges Champion agreed to sell Cello some of the debtor's assets for $1,725,000.00. The Trustee is holding approximately $2.2 million of the proceeds from the sale, and Cello appears to be seeking as damages approximately $800,000.00 which it claims is the amount realized by the Trustee in excess of Cello's offer to Champion.

The parties do not dispute many of the facts giving rise to this action. The debtor, Atlanta Packaging Products, Inc. ("Atlanta Packaging"), was formed in September, 1984 by certain investors who purchased Atlanta Packaging's assets from St. Regis Corporation ("St. Regis"). St. Regis sold assets to Atlanta Packaging for cash plus a $3,200,000.00 promissory note due in September of 1985. To secure the note, St. Regis received a security interest in Atlanta Packaging's assets, including its accounts receivable, inventory, machinery and equipment. St. Regis' security interest in Atlanta Packaging's accounts receivables, machinery, and equipment was subor-

---

1. This proceeding was originally assigned to the Honorable A. David Kahn, Chief Judge, United States Bankruptcy Court for the Northern District of Georgia. In the fall of 1987, the case was transferred to the undersigned.

dinate to the security position of Citicorp Industrial Credit, Inc. ("Citicorp").

St. Regis was later merged into defendant Champion and thus Champion is the successor in interest to St. Regis' claim and security position. Atlanta Packaging failed to pay the obligation owed to Champion when it became due in September, 1985. In the last few months of 1985 and throughout most of 1986, Atlanta Packaging attempted to sell its assets to a third party that would operate the business and assume some or all of Atlanta Packaging's liabilities.

Atlanta Packaging surrendered its assets to Champion on December 4, 1986 in order for Champion to dispose of the assets to pay the debts owed to Champion and Citicorp. After December 4, 1986, Champion attempted to dispose of Atlanta Packaging's assets. The parties agree that while Champion took possession of the debtor's assets, Champion never had legal title to the assets.

The plaintiff, Cello, became interested in purchasing Atlanta Packaging's assets in December of 1986. On January 19, 1987, Cello sent a letter of intent addressed to the "Board of Directors Atlanta Packaging Products, Inc. c/o Champion International Corp. (Debtor-in-Possession)" offering to purchase certain assets of Atlanta Packaging for $1,350,000.00. The letter of intent included several conditions. On or about January 21, 1987, representatives and attorneys of Champion and Cello met in New York to discuss Cello's offer. The parties agree that no purchase price was agreed upon at this meeting. On January 26, 1987, unsecured creditors filed an involuntary Chapter 7 bankruptcy petition against Atlanta Packaging in this Court.

The parties agree that Jim Ball of Cello and John O'Brien of Champion had one or more telephone conversations on or about January 27, 1987, but the parties dispute what was said in these conversations and the legal significance of the conversations. Mr. O'Brien testified on deposition that he and Mr. Ball agreed to a price of $1,725,-000.00 in a telephone conversation on January 26 or 27, 1987, but that he informed Mr. Ball that an involuntary Chapter 7 proceeding had been filed against Atlanta Packaging and that Mr. O'Brien was not sure whether Champion could continue to market the assets. Cello has submitted an affidavit by Mr. Ball in which he states that the parties reached an agreement in the January 27, 1987 telephone conversations, that Mr. O'Brien did not advise him of the bankruptcy filing until the next day, January 28, 1987, and that Mr. O'Brien stated that the deal was still on as long as Champion had control of the assets.

On January 30, 1987, Mr. Ball sent Mr. O'Brien a letter stating that pursuant to their telephone conversation of January 27, 1987, he was confirming the agreement to buy Atlanta Packaging's assets for $1,725,-000.00. The second paragraph of the January 30, 1987 letter states "[t]his agreement is subject to your continuing to have authority and power to sell said assets and consistent with the terms and conditions previously discussed, including acceptable financing". Mr. Ball requested that Mr. O'Brien return a signed copy of the letter if it set forth the agreement of the parties so that the parties could "proceed toward execution of a purchase agreement". Mr. O'Brien did not sign or return a copy of Mr. Ball's January 30, 1987 letter.

On February 4, 1987, Mr. O'Brien of Champion wrote a letter to Mr. Ball at Cello in response to Mr. Ball's January 30, 1987 letter. Mr. O'Brien states in the February 4, 1987 letter that his understanding of the items discussed on January 27, 1987 was that the sale of the assets for $1,725,-000.00 was subject to certain contingencies, which included (with emphasis added):

a. Approval of the owners of Atlanta Packaging Products, Inc.

b. Approval of Citicorp Industrial Credit, Inc.

c. *Favorable resolution of the involuntary bankruptcy proceedings filed Monday, January 26, 1987 which will permit us to go forward with the sale of the assets. We are presently subject to the automatic stay in the bankruptcy case because*

*Atlanta Packaging Products, Inc.*
*still has title to the assets.*

d. Resolution of various issues arising from our review of your "letter of intent" dated January 19, 1987 which we discussed at our meeting on Wednesday, January 21, 1987.

e. Entering into a sub-lease agreement of the premises at 840 Woodrow St., Atlanta, Georgia.

On February 19, 1987, the Court entered an order for relief in the involuntary bankruptcy case and appointed David Cranshaw as Trustee ("Trustee"). On February 24, 1987, counsel for Cello sent a letter to counsel for Champion with a proposed offer to purchase the debtor's assets from the Trustee. The letter requested that counsel for Champion review the offer and then contact counsel for Cello. Paragraph (5) of the offer is entitled "Agreement of Champion", and it provides as follows (with emphasis added):

[b]y its signature below, Champion agrees that the purchase price to be paid by Buyer for the Purchased Assets is a fair and reasonable price *and upon acceptance by the Trustee and approval of the Bankruptcy Court,* Champion agrees to accept the proceeds of the sale, less any administrative expenses approved by the Bankruptcy Court with respect to the Purchased Assets, in full satisfaction of that portion of its claim against APP [the debtor] secured by the Purchased Assets.

Cello never sent this offer to the Trustee, and this agreement was never signed by Champion.

On March 4, 1987, counsel for Cello wrote the Trustee a letter enclosing a list of property Cello desired to purchase and stating (with emphasis added) "[a]gain, I need to emphasize the need to act quickly if you want to preserve *Cello's bid* ".

On April 14, 1987, the Honorable A. David Kahn entered an order permitting Champion to continue discussions with potential purchasers concerning the sale of the debtor's assets, with the Trustee's ultimate approval and subject to order and notice to creditors. On that same day, the Honorable A. David Kahn also entered an order and notice to all creditors and other parties in interest that the Trustee had filed a motion requesting authority to proceed with a sale of the debtor's assets free and clear of all liens and other interests, with valid liens to attach to the proceeds of the sale. The order and notice indicated that the Trustee would provide separate notice to creditors of the specific sale terms proposed. The notice further provided that in the event there was an objection to the relief requested by the Trustee, a hearing would be held on May 20, 1987.

On April 15, 1987, Cello filed the instant complaint against Champion and the Trustee seeking, *inter alia,* to require the Trustee to sell certain assets of the debtor to Cello for $1,725,000.00.

On May 7, 1987, the Trustee entered into an agreement to sell Atlanta Packaging's assets to Cadillac Products, Inc. ("Cadillac") for a purchase price of $2,700,000.00. The assets which Cadillac offered to buy included inventory and certain real property which was not encumbered by Champion's or Citicorp's security interest.

On May 7, 1987, the Honorable A. David Kahn entered an order and notice to all creditors and other parties in interest stating that the Trustee had entered into a purchase agreement with Cadillac, subject to Court approval, which provided for the sale of real property, machinery, equipment, raw material inventory, and certain other personal property of the debtor for a purchase price of $2,700,000.00. The order and notice stated that the Trustee sought authorization to consummate this sale, and provided that any objection would be heard on May 20, 1987.

On May 18, 1987, Cello filed an objection to the proposed sale to Cadillac claiming that Cello had an equitable interest in the assets. The Court held a hearing on the matter on May 20, 1987 and approved Trustee's motion to sell the assets to Cadillac for $2,700,000.00. Cello appeared at the hearing and did not present an offer to the Trustee or make any bid to purchase any of the debtor's assets in Court. It is undisputed that Cello's previous offer did

not include the real estate valued by the Trustee at $200,000.00, nor did it include some of the inventory purchased by Cadillac valued at $300,000.00.

Fed.R.Civ.P. 56 and Bankruptcy Rule 7056 provide for the granting of a summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. The movant has the initial burden of showing that there is no genuine issue of fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Meir v. United States (In re Healthcare Services, Inc.)*, 85 B.R. 913, 915 (Bankr.N.D.Ga.1986). In determining whether there is a genuine issue of material fact, the Court must view the evidence in the light most favorable to Cello, the party opposing the motion. *Hershey v. City of Clearwater*, 834 F.2d 937, 941 (11th Cir.1987); *Healthcare Services*, 85 B.R. at 915. In discussing the movant's burden under Rule 56, the United States Supreme Court held in *Celotex* that the movant must identify those parts of the record that demonstrate the absence of a genuine issue of material fact, but the movant need not support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Healthcare Services*, 85 B.R. at 915.

Pursuant to Fed.R.Civ.P. 56(e), once the movant meets his initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." The Court in *Celotex* said:

> where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Further, in order to defeat a motion for summary judgment, the non-moving party who has the burden of proof at trial must show that there is a *genuine* issue as to the existence of an element of that party's case by submitting that quantum of evidence which would be sufficient to establish a prima facie case at trial. If the evidence is merely colorable or not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986); *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988), *petition for cert. filed* June 18, 1988; *Kramer v. Unitas*, 831 F.2d 994, 997 n. 10 (11th Cir.1987). The genuine issue must be one of *material* fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Champion's motion for summary judgment is based on several grounds. First, Champion argues that no contract between the parties ever existed as there was no meeting of the minds. Champion characterizes the January 30, 1987 and February 4, 1987 letters as an offer and counter-offer, while Cello characterizes the February 4, 1987 letter as the acceptance of an offer. Second, Champion argues that any contract created by these letters is unenforceable as it lacks mutuality due to a financing contingency and does not satisfy the requirements of the statute of frauds. Third, Champion argues that the purported contract, if one existed, was never assumed by the Trustee, and thus it is unenforceable.

On June 1, 1988, the Court held a brief hearing in order to clarify and understand the parties' positions on the pending motion for summary judgment. At the conclusion of the hearing, the Court requested additional briefs from the parties on two issues: (1) whether there was any basis to imply that Champion had a duty to take adversarial action against the Trustee in order to obtain the ability to sell assets to Cello

without Court approval; and (2) how this case differs from the body of case law promoting competitive bidding and requiring Court approval of the offer which produces the maximum benefit for the estate.

■ After a thorough review of the briefs and the record presented, the Court finds that factual disputes regarding whether there was a meeting of the minds and whether the conditions to the contract created a lack of mutuality prevent the granting of a summary judgment on the first two grounds of the motion. However, even accepting Cello's position that a contract existed, a summary judgment in favor of Champion and the Trustee is proper since it is undisputed that any agreement by Champion to sell the debtor's assets to Cello was conditioned on a favorable resolution of the involuntary bankruptcy proceedings (February 4, 1987 letter) and approval by the Trustee and the Bankruptcy Court (February 24, 1987 proposal by Cello). It is undisputed that Champion never represented that it had title to the debtor's assets or that it had authority to sell the assets to Cello without the Trustee's approval and the approval of the Bankruptcy Court. It is also undisputed that neither the Trustee nor the Bankruptcy Court ever approved the sale to Cello and thus this condition was never satisfied. Indeed, Cello never presented a written offer to the Trustee and did not submit a bid in Court at the May 20, 1987 hearing. Thus, conditions which were essential to the enforcement of any agreement were never met and Cello has failed to make a showing sufficient to establish the existence of an element essential to its case.

■ Cello offers several arguments in opposition to the motion for summary judgment, but none of these arguments are supported by any evidence or applicable law. Cello first argues that even though Champion did not have title to the debtor's assets, it was still obligated to sell these assets to Cello. Cello argues that one may contract to sell property that he does not own and that this is what Champion did in this case. In support of that argument, Cello cites *Horne v. Wright*, 157 Ga.App.

408, 278 S.E.2d 66 (1981). However, the *Horne* case, a non-bankruptcy case, is distinguishable. In *Horne*, the seller contracted to sell property he did not own, taking his chances on obtaining title prior to the date of confirmation of the sale, or else being liable for damages if he failed to obtain title. Here, it is undisputed that Champion never represented that it had title to the assets or the authority to sell the assets. The parties were all aware that Champion did not have legal title to the assets and that the filing of the involuntary bankruptcy case meant that any sale of the debtor's assets was conditioned on approval by the Bankruptcy Court and the Chapter 7 Trustee.

■ Cello's primary argument is that the condition in the February 4, 1987 letter from Mr. O'Brien to Mr. Ball that there be a "favorable resolution of the involuntary bankruptcy proceeding" imposed an affirmative duty on Champion to take some action to see that that condition was satisfied. Cello then argues that the actions which Champion was obligated to take in order to see that that condition was satisfied include filing a motion for relief from stay, seeking an abandonment of certain assets of the debtor, seeking a voluntary dismissal of the involuntary petition, obtaining the consent by the Trustee to a sale to Cello, and converting the case to a Chapter 11 case and filing a plan of reorganization which would include a sale to Cello.

Cello has not presented any evidence to support its argument. There is no language in the documents from which the Court can infer that Champion had a duty to take the steps Cello urges Champion should have taken. Cello offered no positive evidence that Champion ever agreed to seek an abandonment of the assets, approval of the sale to Cello, approval of a plan of reorganization, or relief from the stay. Furthermore, Champion did meet with counsel for the petitioning unsecured creditors to urge a dismissal of the involuntary petition, but the unsecured creditors refused to do so and requested that the Trustee investigate a challenge to Champion's secured claim. In order to show a

genuine dispute of material fact and to thereby defeat a motion for summary judgment, the non-moving party must submit evidence which would establish a prima facia case at trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 322–325, 106 S.Ct. at 2552–2554. Cello did not submit any such evidence to avoid summary judgment on this issue.

■ The law does not support Cello's construction of the condition in the February 4, 1988 letter that there be a favorable resolution of the involuntary bankruptcy proceeding. Construction of a contract is a matter of law to be decided by the court, and is therefore properly disposed of by summary judgment. *Hall v. Simkins Industries*, 584 F.Supp. 955, 959 (N.D.Ga. 1983), *aff'd.* 732 F.2d 132 (11th Cir.1984). Cello argues that the general good faith obligations imposed on parties to a contract required Champion to pursue various strategies in the Bankruptcy Court over the objection of the Trustee. In support of its argument, Cello cites Georgia cases which provide that where a contingency in a contract protects one party to the contract, that protected party has a good faith obligation to seek to have the contingency take place. *Smithloff v. Benson*, 173 Ga.App. 870, 872–873, 328 S.E.2d 759 (1985); *Koets, Inc. v. Benveniste*, 169 Ga.App. 352, 354, 312 S.E.2d 846 (1983), *aff'd.* 252 Ga. 520, 314 S.E.2d 912 (1984); *Brack v. Brownlee*, 246 Ga. 818, 819, 273 S.E.2d 390 (1980). However, the contingency in each of those cases was one that clearly protected the party upon whom the good faith obligation was imposed. *Brack* and *Koets* involved financing contingencies in real estate contracts and *Smithloff* involved a contingency that the purchaser obtain city approval of plans to convert real estate for use as a clinic and doctor's office. The contingency in the case at bar—the favorable resolution of the involuntary bankruptcy proceeding—protected both Cello and Champion, and there is no basis upon which the good faith obligation to seek fulfillment of that contingency should be imposed solely on Champion.

Furthermore, the good faith obligation discussed in the Georgia cases cited by Cello were reasonable and not inconsistent with public policy. Cello's construction of Champion's obligations is unreasonable and antithetical to the purposes and policies of the bankruptcy laws. A reasonable construction of a contract is preferred to one which is unreasonable. *Jordan v. Smith*, 596 F.Supp. 1295, 1304 (N.D.Ga.1984); *St. Regis Paper Company v. Aultman*, 280 F.Supp. 500, 508 (M.D.Ga.1967), *aff'd.* 390 F.2d 878 (5th Cir.1968); *Gray v. Cousins Mortgage and Equity Investments*, 145 Ga.App. 889, 245 S.E.2d 58 (1978).

Each action which Cello argues should have been pursued by Cello would have either been unsuccessful or contrary to the purposes of the Bankruptcy Code. Champion tried to persuade the unsecured creditors to dismiss the bankruptcy, but Champion could not itself have sought dismissal of the involuntary bankruptcy proceeding. The proceeding was brought by the requisite number of unsecured creditors, and there would have been no basis for the Court to have dismissed an involuntary petition on the motion of a secured creditor. The record shows that if Champion had sought relief from the automatic stay, an abandonment of some of the assets or a sale to Cello under § 363 or pursuant to a plan, the Trustee would have opposed such actions. The Trustee testified on deposition that he would have requested additional time within which to investigate the validity of Champion's security interest. The Trustee testified further that he would have objected to a motion for relief from stay because if Champion were permitted to obtain possession of some of the assets, that would have greatly impaired the Trustee's ability to liquidate the real estate, for the Trustee believed that he could obtain a higher price for the unencumbered real estate by selling it along with the other assets. In fact, the sale to Cadillac included real estate valued at $200,000.00 and inventory valued at $300,000.00 which were not included in Cello's bid. Cello argues that Champion could have succeeded in persuading the Court to abandon or sell the assets to Cello for a lower price over

the Trustee's objections. The Court finds this very unlikely. Bankruptcy courts have sustained the refusal of a debtor to sell property despite the insistence of important creditors to the contrary. *See In re Highway Equipment Company, Inc.*, 61 B.R. 58 (Bankr.S.D.Ohio 1986).

It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate. *In re Blue Coal Corporation*, 59 B.R. 157, 162 (Bankr.M.D.Pa.1986). *See also In re Robison*, 74 B.R. 646 (E.D.Mo. 1987) (holding that in order to maximize the sale price of the property of the bankruptcy estate, the trustee has the exclusive right, power and authority to sell such property); *Zaccaro v. Bowery Savings Bank (In re Jewel Terrace Corp.)*, 10 B.R. 1008 (E.D.N.Y.1981) (recognizing that the trustee has a fiduciary duty to protect the interests of the debtor's shareholders and creditors, so that the trustee properly sought approval of the more advantageous contract for the sale of the debtor's assets). The Court cannot and will not hold that there is any implied duty on the part of a secured creditor to persuade the Trustee to sell assets at a bargain price to the first interested purchaser, thereby depriving creditors from receiving the maximum possible payment.

This case resembles the cases involving frustrated bidders, and the courts have generally held that frustrated bidders lack standing to object to sales of property. *In re Planned Systems, Inc.*, 82 B.R. 919 (Bankr.S.D.Ohio 1988); *Big Shantyland Corp. v. Comer Properties, Inc.*, 61 B.R. 272 (N.D.Ga.1985); *In re Nepsco, Inc.*, 36 B.R. 25 (Bankr.D.Me.1983); *Jewel Terrace*, 10 B.R. at 1011–1012. The courts have long recognized the need for competitive bidding at hearings on private sales. *In re Muscongus Bay Company*, 597 F.2d 11 (1st Cir.1979); *In re Alves*, 52 B.R. 353 (Bankr.D.R.I.1985); *In re Dartmouth Audio, Inc.*, 42 B.R. 871, 874 (Bankr.D.N.H. 1984). Competitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is "to maximize the bid-

ding, not to restrict it." *In re The Ohio Corrugating Company*, 59 B.R. 11, 13 (Bankr.N.D.Ohio 1985) (quoting *In re Beck Industries, Inc.*, 605 F.2d 624, 637 (2nd Cir.1979)). This competitive bidding process will inevitably lead to disappointed bidders, but this is a risk inherent in the bankruptcy process. There is no reason to treat Cello's bid for the debtor's assets differently from any other low offer. The fact that Cello negotiated with Champion immediately prior to bankruptcy and refused to negotiate with the Trustee does not insulate Cello from the competitive bidding process in bankruptcy cases which promotes the policy of obtaining the best sale price possible for the benefit of the estate and the creditors. Cello took the risk that there would be an unfavorable resolution of the bankruptcy and now must accept whatever loss it may have suffered.

■ Finally, Cello has argued in a supplemental brief that Champion acted in bad faith, conspired with the Trustee to defeat a sale of the debtor's assets to Cello, and that the sale of the debtor's assets to Cadillac resulted in a benefit only to Champion. Cello argues that the Trustee was used by Champion and acted as "a mere conduit" for Champion to obtain the highest price possible for Champion, with no benefit to the estate. However, Cello has not offered any positive evidence to support these allegations, and the undisputed facts submitted in connection with this motion do not suggest any collusion or bad faith on the part of Champion and the Trustee.

Champion's cooperation with the Trustee in discussing the sale of the debtor's assets with prospective purchasers was approved by the Court in an Order dated April 14, 1987. The sale to Cadillac clearly benefitted the estate as well as Champion, and the Trustee realized an additional $200,000.00 which can be used to pay administrative claims, wage claims, and unsecured claims. Not only is there no evidence of collusion, but the Trustee testified on deposition that he told representatives of Cello that a number of prospective purchasers had been identified; that he met with counsel for Cello and invited Cello to make an offer which included the real estate, since in the Trustee's judgment, he would be able to

obtain more for the estate if all of the debtor's estate including the real estate were sold together rather than piecemeal; and that he met with counsel for Cello and representatives of Cello on or about March 10, 1987, at which time he explained that any sale of the debtor's assets had to be approved by the Trustee and that other interested purchasers would be able to make bids for the property. Cello does not dispute that the Trustee advised Cello that he would only approve a bid that included the real estate and that he invited Cello to formulate an offer including the real estate. At trial, the burden would be on Cello to prove its allegations of bad faith and intentional, willful misconduct. Since Cello has not submitted any evidence to support its allegations, it has not met its burden of producing some positive evidence of a disputed genuine issue of material fact so as to defeat summary judgment. *Celotex*, 477 U.S. at 322–325, 106 S.Ct. at 2552–2554; *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir.1987).

For the reasons set forth above, Champion's motion for summary judgment is hereby GRANTED. A judgment consistent with this Order will be entered.

IT IS SO ORDERED.